UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

:

CONVERIUM HOLDING AG,

:

                             Plaintiff,

:         CIVIL ACTION NO.

                     - against -

:

SCOR S.A. AND PATINEX AG,

:

                          Defendants.

:

-------------------------------------------------------------- X

## COMPLAINT

       Plaintiff Converium Holding AG together with its subsidiaries ("Converium" or the "Company"), by and through its undersigned attorneys, as its complaint against defendants SCOR S.A. ("SCOR") and Patinex AG ("Patinex"), alleges, on the basis of knowledge with respect to its own conduct, and on information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION

       1.     This action arises under the United States Securities and Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §§ 78m(d), 78n(d) and 78n(e), and seeks immediate injunctive relief against the unlawful conduct of SCOR and Patinex in connection with their scheme to acquire control of Converium, a leading Swiss reinsurance company.

       2.     SCOR, a French reinsurance company (with extensive United States operations), has commenced an unsolicited exchange offer to purchase the registered shares of Converium, a Swiss reinsurance holding company. Both Converium and SCOR have securities that are listed, and trade on, the New York Stock Exchange. In 2006, SCOR generated

approximately 25% of its gross premiums in North America through 100% owned subsidiaries located throughout the United States (including New York City).

3.     On April 5, 2007, in clear violation of the Williams Act, SCOR announced its offer to purchase all registered shares of Converium (the "Offer"), from which it is intentionally excluding all US persons holding shares of Converium as well as holders of Converium American Depository Shares (or "ADSs").  Unless SCOR extends the Offer to Converium's United States shareholders on terms equal to those being offered to non-US shareholders, as is required under Rule 14d-10 of the Williams Act, SCOR should be prohibited from taking any steps to effectuate the Offer.  The Offer has triggered application of the Williams Act because, among other things, approximately 22% of SCOR's registered shares which are subject to the Offer are held by United States persons (including ADSs), the Offer has attracted widespread media coverage in the United States, SCOR's and Converium's ADSs are listed on the New York Stock Exchange, and SCOR has openly admitted that United States shareholders may indirectly avail themselves of the Offer.

4.      SCOR openly admits that the reasons for its non-compliance with the Williams Act are the burdens and risks of complying with the Act, and the risks of litigation by "**Converium shareholders and competing bidders in the US or by the SEC on the basis of alleged inadequate disclosure**".

5.     Despite triggering application of the Williams Act, SCOR has ignored its obligations to file the required tender offer statement concerning the Offer (which is required under Rule 14d-3 of the Exchange Act), a registration statement and prospectus (which is required under the Securities Act of 1933 (the "Securities Act") if SCOR's securities are being offered in exchange for Converium's securities), and other detailed and material information

concerning the Offer under the United States federal securities laws.  SCOR has attempted to

justify its failure, asserting that it is not tendering for shares held by US shareholders and,

therefore, it is free to ignore the protections afforded to US shareholders under the federal

securities laws.  Such blatant exclusion violates Rule 14d-10 of the Exchange Act which makes it

clear that no bidder may make a tender offer unless "[t]he tender offer is open to all security

holders of the class of securities subject to the tender offer."  Even in the context of cross-border

tender offers, Rule 14d-1 makes it plain that offers to US holders must be made "on terms at

least as favorable as those offered any other holder of the same class of securities that is the

subject of the tender offers."  SCOR is willfully flouting these unambiguous provisions.

6.    SCOR's intent and objective to evade the disclosure obligations of the

federal securities laws were recently unmasked when SCOR made a number of submissions to

the Swiss Takeover Board (which oversees the takeover of companies whose securities are listed

on the Swiss Stock Exchange).  In those submissions, SCOR candidly admitted that compliance

with United States securities laws and registration requirements would be too burdensome, create

heightened litigation risk from the SEC and private plaintiffs, interfere with SCOR's plan to

delist its securities in the United States, and that Converium's US shareholders would be driven

to take advantage of the Offer and tender their Converium shares by hiring brokers outside the

United States (without the benefits of disclosure under the Williams Act).  SCOR's reasons do

not justify – indeed, they *confirm* – its willful failure to circumvent the United States securities

laws.

7.    Defendants' willful disregard for the federal securities laws is further

confirmed by the failures of SCOR and Patinex to make full disclosure under Section 13(d) of

the Exchange Act and Rule 13d-1 promulgated thereunder (which obligates owners of greater

than 5% blocks of shares to disclose to shareholders the nature and purpose of their ownership interests).  Converium's shareholders, and the investing public, first became aware of the full extent of SCOR and Patinex's ownership interests in Converium when, on February 21, 2007, a Schedule 13D filed by SCOR revealed it had contracted to acquire 19.8% of Converium's outstanding shares held by Patinex pursuant to a share purchase agreement (the "Patinex SPA"), as well as 4.8% of Converium's outstanding shares held by Swedish company, Alecta pensionsförsäkring ("Alecta"), pursuant to a separate share purchase agreement (the "Alecta SPA"), and that, separate and apart from these arrangements, SCOR had already acquired 8.3% of the outstanding shares of Converium through open market purchases.  In the Schedule 13D filed by SCOR, SCOR announced that its acquisition of 8.3% of Converium's outstanding shares had commenced in November 2006.  Put differently, Patinex has owned nearly 20% of Converium's outstanding capital stock, yet, in clear contravention of the requirements of Section 13(d) of the Exchange Act, has failed to make a single filing under Section 13(d) of the Exchange Act.  Now, a group consisting of SCOR and Patinex have acquired -- and currently control -- at least 32.9% of Converium's shares, and that acquisition was accomplished by a willful and deliberate failure to make required filings under Section 13(d) of the Exchange Act.

8.      Absent injunctive relief, SCOR and Patinex threaten to take control of the Company without adequate disclosure under Sections 14(d) and 13(d) of the Exchange Act.

9.      The declaratory and injunctive relief sought herein is necessary to provide Converium and its shareholders an opportunity to evaluate whether Converium's shareholders should tender into the Offer and to provide them all the material information about the Offer and the bidder (i.e., SCOR) to which they are entitled under the United States securities laws.  Absent such relief, there is a substantial likelihood that Converium and its shareholders will be

irreparably harmed. Shareholders will take actions (such as selling their shares or shares represented by ADSs prior to the completion of the Offer) that they would not otherwise take with the benefit of accurate information.

10.    Until (i) SCOR complies in full with Rule 14d-10 and extends the Offer on equal terms to all Converium shareholders (US persons, including Converium ADS holders, and non-US persons), (ii) SCOR files a proper and accurate Schedule TO under Rule 14d-3 (which bidders are obligated to file), (iii) SCOR files a registration statement and prospectus under the Securities Act (governing the securities that SCOR is intending to offer to Converium's shareholders), and (iv) SCOR and Patinex file proper and accurate disclosures concerning the acquisition of their ownership interests, under Section 13(d) of the Exchange Act, SCOR and Patinex should be barred from taking any further actions in connection with the contemplated Offer, including taking down shares that are tendered into the Offer and purchasing shares pursuant to the Patinex SPA.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 13(d), 14(d) and 14(e) of the Exchange Act (15 U.S.C. §§ 78m(d), 78n(d) and 78n(e)) and the Securities and Exchange Commission ("SEC") rules and regulations promulgated thereunder.

12.    This court has jurisdiction over the action pursuant to the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1331 (federal question).

13.    Venue is proper in this judicial district pursuant to the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391. One or more of the acts and transactions complained of herein have occurred, are occurring, and unless enjoined, will continue to occur in this judicial district.

14.     This Court has personal jurisdiction over SCOR and Patinex based, among other things, upon the SEC filings complained of herein and the trading of SCOR's ADSs upon the New York Stock Exchange.  SCOR has designated an agent for service of process in New York.  Furthermore, Patinex has made a number of regulatory filings with the insurance departments of New Jersey, Connecticut and California.

## THE PARTIES

15.     Plaintiff Converium is a corporation organized and existing under the laws of Switzerland, with its principal place of business located at Dammstrasse 19, CH-6301, Zug, Switzerland.  Converium operates its business as a foreign private issuer as defined in Rule 3b-4(c) under the Exchange Act.  Converium is an independent international multi-line reinsurer, which is organized into three business segments:  Standard Property & Casualty Reinsurance, Specialty Lines, and Life & Health Reinsurance.

16.     Shares of Converium's common stock are registered under Section 12(b) of the Exchange Act, and listed on the SWX Swiss Exchange.  In addition, Converium's ADSs are traded on the New York Stock Exchange under the ticker symbol "CHR."

17.     Defendant SCOR is a corporation organized and existing under the laws of France with its principal place of business located at 1, avenue du General de Gaulle, 92 800 Puteaux, France.  SCOR's principal business is to provide (directly or through its consolidated subsidiaries) Life and Non-Life reinsurance services, as well as direct insurance services.  SCOR is a foreign private issuer as defined in Rule 3b-4(c) under the Exchange Act.  SCOR's ordinary shares are registered under Section 12(b) of the Exchange Act, and its ADSs are listed on the New York Stock Exchange under the ticker symbol "SCO."  SCOR is a global reinsurance business that in 2006 generated approximately 25% of its gross premiums in North America

through its 100% owned United States subsidiaries, including SCOR Reinsurance Company, that has offices at One Seaport Plaza, 199 Water Street, New York, NY 10038 (as well as in Illinois and Florida).

18.    Defendant Patinex is a corporation organized and existing under the laws of Switzerland and has its principal place of business located at Egglirain 24, 8832 Wilen, Switzerland.  Patinex is controlled by its CEO, Swiss investor Martin Ebner ("Ebner"), and is an investment company operating for the benefit of Mr. Ebner.  Mr. Ebner is a well-known shareholder activist who has taken equity positions in companies in order to push decisions for his own interests, including changes in management.  Patinex, which accumulated a near-20% stake in Converium without any US securities filings and represented to United States insurance regulators that it had no intention of influencing control of Converium, organized and attended meetings between SCOR and Patinex for the very purpose of changing control of Converium. Ebner has publicly stated that he supports a transaction between SCOR and Converium.

## BACKGROUND

### A.    Patinex and SCOR Acquire Nearly One-Third of Converium With No Public Disclosure

19.    In December 2005, Patinex notified Converium in a Swiss filing that it had acquired 12.49% of the voting rights in the Company.  5.06% of the voting rights were in the form of 7,425,000 registered shares, and 7.43% were in the form of purchase rights with an entitlement to purchase 10,900,000 registered shares.  Almost immediately after the acquisition, Ralph Stadler, a spokesperson for Mr. Ebner, stated that the stake in Converium "is a long-term investment."  *International Herald Tribune*, Dec. 23, 2005.

20.    In connection with the acquisition, Patinex sought an exemption from various state insurance departments (New Jersey, Connecticut and California), whose approval is ordinarily required when there are changes in the ownership structure of an insurance company. In order to obtain a state insurance regulatory exemption from such an approval, Patinex represented that its investment was not being made for the purpose of changing or influencing the ultimate control of Converium.  However, in granting the requested approval, at least one state insurance department required Patinex to file *another* exemption request should its ownership position exceed 15%.  Prior to February 2007, Patinex's ownership position not only increased, but exceeded 15%.  Converium has at no time received any notification that Patinex had increased its ownership beyond 15% or that it had informed any state insurance regulator that its ownership position had exceeded 15%.

21.    At some point between December 2005 and the present, Patinex purchased an additional amount of Converium shares, such that Patinex increased its holdings from 12.49% to 19.8% of the outstanding shares of the Company.  Between November 2006 and February 16, 2007, SCOR similarly purchased 8.3% of Converium's registered shares through open market purchases.  ***The parallel and coordinated trading by the Patinex-SCOR group in Converium's securities was accomplished without any public disclosures***.  By late January 2007, SCOR was making near-daily purchases of large quantities of Converium shares.  On January 24, 2007, SCOR and Patinex had entered into a confidentiality agreement; therefore the Patinex-SCOR group had at least been formed by that time.  Prior to February 21, 2007, SCOR did not file a Schedule 13D.  And at no point has Patinex filed a Schedule 13D.

**B.      SCOR And Patinex Execute A Share Purchase Agreement**

22.     On February 21, 2007, Converium's shareholders learned for the first time that nearly a third of the Company's voting power was under SCOR's control.  No SEC filing prior to February 21, 2007 had been made by either SCOR or Patinex with respect to the share acquisitions.

23.     SCOR's Schedule 13D filed on February 21, 2007 revealed that on February 16, 2007, Patinex and SCOR had entered into the Patinex SPA.  The Patinex SPA provides that Patinex would sell its Converium shares and warrants to SCOR for CHF 121,885,470, plus 14,331,037 newly issued shares in SCOR.  The Patinex SPA represented that Patinex was "the sole legal and 'Beneficial Owner' (as determined pursuant to Rule 13d-3 under the Exchange Act) of  (i) (a) 14,185,350 [Converium] Shares, and (b) 14,835,000 Purchase Rights."  This disclosure suggested that Patinex was aware of the requirements of Section 13(d), but ignored them.

24.     The transfer of shares contemplated by the Patinex SPA is scheduled to close after all regulatory approvals have been obtained.  According to SCOR's public filings, those approvals may likely be obtained some time in April 2007.

25.     SCOR's February 21, 2007 filing noted that SCOR had entered into a substantially identical share purchase agreement with Alecta, an entity organized and existing under the laws of Sweden, pursuant to which SCOR agreed to acquire an additional 7,100,000 shares, which represents 4.8% of the outstanding shares of Converium.

26.     SCOR's Schedule 13D therefore revealed that, after giving effect to the share purchase agreements with Patinex and Alecta, SCOR would have beneficial ownership of 32.9% of Converium's issued share capital.

### C.     SCOR's Offer

27.     On February 17, 2007, SCOR proposed an offer for the acquisition of the Company to the Converium Board of Directors.  The initial meeting between SCOR and Converium was organized and attended by Patinex CEO Martin Ebner, who has publicly supported a change of control of Converium.

28.     On February 18, 2007, the Board of Directors of Converium unanimously rejected the initial offer, concluding that it fundamentally failed to recognize the value of Converium's franchise and growth prospects, and it was, therefore, not in the interest of Converium, its shareholders, and its customers.

29.     On February 26, 2007, SCOR issued a formal pre-announcement of the Offer indicating that it intended to launch a public tender offer on or about April 2, 2007 for all of Converium's shares.  On April 5, 2007, SCOR issued a Swiss offer prospectus announcing the Offer (the "Offer Prospectus").  The Offer Prospectus made it clear that:

- SCOR currently holds 12,200,000 Converium shares and has entered into share purchase agreements with two of Converium's largest shareholders, Patinex and Alecta, to purchase an aggregate of 36,120,350 additional shares.

- SCOR intends to offer for each Converium share 0.5 SCOR shares with a nominal value of EUR 7.8769723 per share, as well as CHF 4 in cash.

- The Offer would neither extend to Converium shares held by Converium, nor to Converium's ADSs.

- SCOR's Offer would be subject to a number of conditions, including valid acceptances for shares representing at least 50.01% of the Company's share capital.

- The Offer would not be made in or into the United States and would only be accepted outside of the United States. **SCOR further advised that it would not register or offer its securities in the United States or to United States persons.**

30.     The Offer Prospectus indicates that the Offer period will run from April 23, 2007 to May 22, 2007, subject to extension.  If the Offer is successful, an additional acceptance period of ten trading days would run from May 29, 2007 to June 11, 2007.  The Offer Prospectus estimates that the exchange of Converium shares will be completed by June 21, 2007.

31.     SCOR's Offer has received widespread media and analyst coverage in the United States, with media outlets including *The Wall Street Journal* and *The Daily Deal* running many stories on the proposed Offer.  For instance, on February 27, 2007, *The Wall Street Journal* (US Edition) announced, "SCOR To Launch A Hostile Offer For Converium," citing to the Offer's pre-announcement.  Also on February 27, 2007, *The Daily Deal* reported that "[a] week after its initial approach was rebuffed, French reinsurer Scor SA on Monday, Feb. 26, turned hostile with a Sfr3.1 billion ($2.5 billion) offer for Swiss peer Converium Holding AG."  On March 1, 2007, *The Wall Street Journal* (US Edition) reported that "Converium Woos Shareholders," pointing to SCOR's hostile takeover proposal.  On March 28, 2007, *The Wall Street Journal* reported that "French reinsurer Scor plans to launch a hostile tender offer for Swiss rival Converium Holding next month to gain more market power and broaden its risk portfolio."

32.     Confirming that Patinex and SCOR are, and have been, acting as a group, Patinex CEO Ebner discussed his decision to sell Converium shares to SCOR in the media, stating that he strongly endorsed control of Converium being transferred to SCOR:

> Converium will obtain critical mass by the merger.  The merger with
> SCOR is an almost ideal solution for Converium's shareholders.  SCOR

will pay Converium shareholders a relatively high premium.  SCOR is
nevertheless prepared to include the whole of Converium's management
into the new entity.  The combination will result in the new company
being the fifth largest global reinsurer. (interview in Swiss weekly
newspaper dated February 27, 2007)

33.     Despite its undoubted desire to induce Converium's US shareholders to
tender into the Offer, SCOR has attempted to justify its exclusion of US shareholders from the
Offer to the Swiss regulatory authorities.  Under Swiss law, SCOR must treat all Converium
shareholders equally and must obtain regulatory approval if SCOR intends to treat shareholders
unequally. In a series of memoranda to the Swiss Takeover Board dated February 26, 2007,
March 9, 2007, and March 23, 2007, SCOR's United States lawyers justified their attempt to
exclude United States shareholders from the Offer (collectively, the "Exclusion Memoranda",
which are attached hereto as Exhibits A, B and C).  SCOR justified its exclusion because
Converium's US investors would, albeit indirectly, be driven to take advantage of the Offer by
transferring their shares to foreign brokers.  For example, the February 26, 2007 memorandum
stated:

> An Exemption would not Prevent US Shareholders from Participating in
> the Upside of the Offer:  US holders of Converium shares (including, ADS
> holders, by converting the ADSs into registered shares) would be able to
> tender into the Offer in Switzerland by transferring their holdings to a
> broker or nominee located in Switzerland (or another non-US branch of
> their current broker or nominee) and requesting that such broker or
> nominee tender their shares into the Offer.

34.     The February 26, 2007 memorandum also asserted that complying with
the US securities laws would be "too arduous and disproportionate" because the "registration
process in the US is unduly burdensome and timely" and "SCOR would have litigation exposure
in the US in connection with the Offer."  SCOR also argued that "[b]y extending the Offer into
the US, SCOR would have heightened liability exposure to class action or derivative lawsuits

that may be brought by Converium shareholders and competing bidders in the US or by the SEC

on the basis of alleged inadequate disclosure" because "civil and criminal liability may arise

from untrue statements of material facts, omissions to state required material facts or materially

false and misleading statements in the Registration Statement or Schedule TO and failure to

comply with applicable registration requirements."  The February 26, 2007 memorandum further

argued that SEC registration would interfere with SCOR's plans to delist in the United States.

35.     In the March 9, 2007 memorandum, SCOR argued that "[i]f the Offer is

not extended into the US, Converium shareholders may nonetheless find ways to participate in

the Offer" and pointed to the "widely-known practice of sophisticated US investors finding ways

to participate in foreign tender offers through foreign intermediaries."  Similar arguments were

made in SCOR's March 23, 2007 memorandum.

36.     SCOR's scheme to exclude US shareholders from the Offer violates Rule

14d-10, which is titled "Equal Treatment of Security Holders."  Rule 14d-10 is clear: no bidder

"shall make a tender offer unless … [t]he tender offer is open to all security holders of the class

of securities subject to the tender offer; . . . and [t]he consideration paid to any security holder for

securities tendered in the tender offer is the highest consideration paid to any other security

holder for securities tendered in the tender offer."

37.     The SEC has made it crystal clear that even in cross-border tender offers,

where the Williams Act requirements are somewhat simplified, the provisions of Rule 14d-10

apply with full force. A foreign bidder such as SCOR "may separate the offer into two offers:

one offer made only to U.S. holders and another offer made only to non-U.S. holders."  But even

in dual offers, "[t]he offer to U.S. holders must be made on terms at least as favorable as those

offered any other holder of the same class of securities that is the subject of the tender offers." *See* Rule 14d-1(d)(2)(ii).  Here, SCOR has simply ignored these provisions.

38.     On April 13, 2007, Converium filed a response to the Offer under Swiss law, making clear its belief that the Offer was not in the best interest of Converium's shareholders.  On April 13, 2007, Converium also filed a Schedule 14D-9 under the Williams Act disclosing why the Converium board believed the Offer was not in the best interests of shareholders.

## FIRST CLAIM FOR RELIEF (AGAINST BOTH DEFENDANTS)

## Violation of Section 13(d) of the Exchange Act By SCOR and Patinex

39.     Plaintiff repeats and realleges Paragraphs 1 through 38 as if fully set forth herein.

40.     Section 13(d) of the Exchange Act and Rule 13d-1 promulgated thereunder requires a group that has acquired, directly or indirectly, beneficial ownership of more than 5% of a class of a registered equity security, to file a statement with the SEC, disclosing, *inter alia*, the identity of its members and the purpose of its acquisition.  This statement must also be transmitted to the issuer of the security and to each exchange on which the security is traded.  Under Section 13(d), a group is defined as an aggregation of persons or entities who "act … for the purpose of acquiring, holding or disposing of securities…" such that the members are combined in furtherance of a common objective.  15 U.S.C. § 78m(d)(3).

41.     Patinex and SCOR have acted as a group because they have combined to acquire, hold or dispose of securities of Converium.  That group was formed at least as early as November 2006 when SCOR began purchasing shares of Converium in open market purchases.

Patinex likewise increased its Converium ownership from 12.5% to 19.8% between December

2005 and February 16, 2007.  The Patinex-SCOR group has a common plan or purpose, to wit, a

transfer of control of Converium to SCOR, and has coordinated its trading to accomplish that

goal.  Indeed, SCOR and Patinex entered into a confidentiality agreement on January 24, 2007

and SCOR was buying Converium shares in open market purchases in the same timeframe.

However, neither Patinex nor SCOR, who have clearly communicated about the future of

Converium, have filed a Schedule 13D disclosing in full the circumstances surrounding (i) when

Patinex and SCOR first communicated concerning Converium, and the substance of all such

communications, (ii) the relationship between SCOR and Patinex, (iii) the formation of the

Patinex-SCOR group, and (iv) Patinex's increase in its ownership of Converium and its

relationship to SCOR's transactions in Converium shares.

    42.  While SCOR filed a Schedule 13D on February 21, 2007 disclosing the

existence of the Patinex SPA, Patinex has not made a single US securities filing.  As of February

15, 2007, Patinex beneficially owned approximately 19.8% of the total outstanding shares of

Converium.  Patinex appears to have increased its ownership position from 12.5% to 19.8% over

the course of 2006 or early 2007.  (SCOR similarly increased its ownership to 8.3% from

November 2006 through February 16, 2007.)

    43.  A Schedule 13D filing by Patinex would require disclosure of, among

other things: (1) the number of equity securities that Patinex had acquired or has a right to

acquire "directly or indirectly"; (2) "information as to any contracts, arrangements, or

understandings with any person with respect to any securities of" Converium; (3) the "purpose of

the purchases", including whether Patinex has any "plans or proposals" concerning "[a]n

extraordinary corporate transaction" or "change in the present board of directors or

management"; and (4) the financing arrangements Patinex made for the purchases, including a "description of the transaction".  15 U.S.C. § 78m(d)(1); 17 C.F.R. §§ 240.13d-1, 240.13d-101.

44.    The purpose of Section 13(d) is, among other things, to permit companies, their shareholders and the investing public generally to (i) be aware of accumulations of blocks of stock in excess of five percent of the outstanding shares of any equity security and (ii) ascertain the background of, and other pertinent information relating to, the holders of such blocks -- and the persons who control such holders -- with respect to the particular issuer in question, all with a view toward enabling shareholders and the public to make informed investment decisions based upon full disclosure of all relevant and material information concerning issuers and those in a position to assert control over them.

45.    Patinex's share ownership plainly exceeded the five percent ownership threshold set forth in Rule 13d-1(a), obligating Patinex to file a Schedule 13D with the SEC within 10 days after such time as Patinex exceeded this ownership threshold.  Patinex has deprived the shareholders of Converium, and the investing public, of the material information that they are entitled to receive.  Converium, its shareholders, and the investing public have been, are being, and unless relief is granted by this Court, will continue to be, irreparably injured in that they are without the material information to which they are lawfully entitled.

46.    Patinex and SCOR are obligated to correct the foregoing material omissions so that Converium shareholders have a full and accurate understanding of SCOR's and Patinex's actions and intentions as soon as possible.  Absent such a correction and appropriate interim relief, Converium's shareholders will be irreparably harmed.

47.    Converium has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**

**Violation of Sections 14(d) of the Exchange Act (Against SCOR)**

48.    Plaintiff repeats and realleges Paragraphs 1 through 47 as if fully set forth herein.

49.    Section 14(d)(1) of the Exchange Act makes it unlawful for any person or company "directly or indirectly, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise" to make a tender offer unless such person or company has filed with the SEC "a statement containing such of the information specified in section 13(d) of this title, and such additional information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(d)(1). Pursuant to Section 14(d), Rule 14d-6(d) requires a "bidder" to file a Schedule to disclose this material information. "Bidder" is defined in Rule 14d-1(g)(2) as "any person who makes a tender offer or on whose behalf a tender offer is made." 17 C.F.R. §§ 240.14d-6, 240.14d-1.

50.    SEC rules and regulations promulgated pursuant to Section 14(d) describe in detail the materials that must be included in a tender offer solicitation, registration statement or prospectus, including a Schedule TO and Form F-4. SEC rules and regulations expressly require that bidders make complete and accurate disclosure of, among other things:

(a)    "The reasons for engaging in the transaction," 17 C.F.R. § 229.1004(a)(2)(III); Form F-4, Item 4(a)(2), and "the purposes of the transaction," 17 C.F.R. § 229.1006(a);

(b)    Pro forma financial information reflecting the impact of the transaction on the company, 17 C.F.R. § 229.1010(b), as well as any adjustments attributable to the transaction, 17 C.F.R. § 210.11-02(b)(6) and Item 5 of Form F-4;

(c)    Pro forma financial information required by Regulation S-X, 17 C.F.R. § 210.11-02(b)(6) and Item 5 of Form F-4;

(d)    A description of the accounting treatment of the transaction, Item 4(a)(5) of Form F-4;

(e)    A description of any material litigation, Item 8.A.7 of Form 20-F; and

(f)    A discussion of the most significant risk factors that make the transaction speculative or risky, Item 3 of Form F-4 and 17 C.F.R. § 229.503(c).

51.    In addition to these specific requirements, a bidder must "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading." 17 C.F.R. § 229.1011(b).

52.    Disclosure of the identity and background of each "bidder" is intended to give tendering shareholders information regarding the offeror's management to provide the shareholders with a basis for determining whether to hold, sell or tender all or part of their shares in response to the offer.

53.    SCOR has stated in the Offer pre-announcement and Offer Prospectus that it is excluding US persons from the Offer; SCOR has failed to file materials under cover of a Schedule TO and has failed to make the substantive disclosures that are required under Section 14(d) and the SEC rules promulgated thereunder. However, given (a) the size of Converium's US shareholder base, (b) the fact that both SCOR and Converium have securities listed on the

New York Stock Exchange, (c) that SCOR has candidly admitted that US persons will tender

into the Offer and (d) that the Offer has generated widespread media and analyst publicity in the

United States, SCOR has triggered the requirements under Section 14(d)(1) and the rules

promulgated thereunder to file tender offer materials under the Exchange Act.

54.     SCOR's efforts to evade United States securities laws while at the same

time recognizing that US persons can -- and will -- take advantage of the Offer as detailed in the

Exclusion Memoranda, confirm SCOR's improper efforts to secure the participation of US

persons while avoiding protections afforded to US investors by the Exchange Act.

55.     Converium has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### Violation of Section 14(e) of the Exchange Act (Against SCOR)

56.     Plaintiff repeats and realleges Paragraphs 1 through 55 as if fully set forth

herein.

57.     Section 14(e) of the Exchange Act proscribes untrue statements of

material fact or omissions of fact made in connection with tender offers.  It is unlawful for any

person or company to "make any untrue statement of material fact or omit to state any material

fact necessary in order to make the statements … not misleading, or to engage in any fraudulent,

deceptive, or manipulative acts or practices" in connection with a tender offer.

58.     SCOR's failure to disclose all of the material information that is required

by a Schedule TO and the rules promulgated under Section 14(d) of the Exchange Act

constitutes an omission of material fact necessary to make the statements in its Schedule 13D

and Offer Prospectus not misleading.  In omitting materials filed under cover of a Schedule TO

while commencing an Offer for a company, over 20% of whose shares are held by US persons,

SCOR is engaging in fraudulent, deceptive, or manipulative acts in connection with a tender offer.

59.     SCOR's scheme to exclude US persons from the Offer in order to avoid the disclosure, filing and registration obligations under the Exchange Act and the Securities Act violates Rule 14d-10, which requires that all security holders be subject to "equal treatment." SCOR's scheme to avoid application of Rule 14d-10 is itself a fraudulent, deceptive and manipulative act or practice.

60.     SCOR has also violated Section 14(e) of the Exchange Act because, as set forth above, it has failed to disclose the true circumstances surrounding its and Patinex's acquisition of Converium shares and its relationship with Patinex in connection therewith. SCOR has made no disclosure surrounding the formation of the Patinex-SCOR group, no disclosure of when Patinex increased its ownership in Converium, no disclosure of when Patinex and SCOR first communicated concerning Converium, nor the substance of all communications between SCOR and Patinex.

61.     SCOR's statements of fact and/or omissions of material fact were made knowingly and deliberately in order to deceive Converium and its shareholders about the Offer and the true circumstances surrounding the plan to acquire control of Converium without making the required disclosures under the federal securities laws.

## DECLARATORY AND INJUNCTIVE RELIEF

62.     Plaintiff repeats and realleges Paragraphs 1 through 61 as if fully set forth herein.

63.     The Court may grant the declaratory and injunctive relief sought herein pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 and 65.  A substantial controversy exists

because defendants are committing flagrant violations of the federal securities laws during an Offer for control of the Company.

64.    Unless relief is issued, as a result of their violations of federal securities laws, defendants may succeed in taking control of the Company without shareholders having the opportunity to evaluate the options before them in a fair and even-handed manner.

65.    Injunctive and declaratory relief is required, *inter alia*, (a) declaring violations of Sections 13(d), 14(d) and 14(e) of the federal securities laws, and (b) prohibiting all further action in connection with the Offer, including taking down any registered shares tendered in the Offer, including purchasing shares pursuant to the Patinex SPA, until (i) SCOR complies in full with Rule 14d-10 and extends the Offer on equal terms to all Converium shareholders – US persons (including ADS holders) and non-US persons, (ii) SCOR files a registration statement and prospectus under the Securities Act, and a Schedule TO that complies in full with the requirements of Section 14(d) of the Exchange Act, and (iii) all corrective disclosures are made by SCOR and Patinex, including the filing of a Schedule 13D, truthfully and accurately disclosing the arrangements between SCOR and Patinex regarding their purchase of Converium securities.

66.    Plaintiff and the holders of Converium's registered shares face the prospect of immediate, severe and irreparable injury should SCOR be permitted to proceed with its Offer where Converium's shareholders have been unlawfully excluded from the Offer, material information has been omitted and US securityholders have been denied the opportunity to evaluate all of the material information that Section 14(d), 13(d) of the Exchange Act entitle them to receive.  If the requested relief is not granted prior to the end of the offer period

(currently scheduled to be May 22, 2007), defendants may succeed in seizing control of the Company without having made the necessary disclosures under the federal securities laws.

WHEREFORE, plaintiff respectfully requests that this Court enter Judgment against defendants and in favor of plaintiff, and that the Court issue an Order:

(a)     Declaring that defendants have violated Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 and the rules promulgated thereunder;

(b)     Preliminarily and permanently enjoining defendants from taking any further action, including the acquisition of additional shares or taking down the any registered shares tendered by Converium's shareholders in the proposed Offer, until (i) SCOR complies in full with Rule 14d-10 and extends the Offer on equal terms to all Converium shareholders – US persons (including ADS holders) and non-US persons, (ii) a registration statement and prospectus is filed under the Securities Act, (iii) a Schedule TO is filed that complies with Section 14(d) of the Exchange Act, and (iv) a Schedule 13D is filed by Patinex and SCOR making prompt and accurate disclosures,  and that such injunction be maintained for an additional period of at least 20 days following such corrective disclosure and filing;

(c)     Enjoining defendants and their agents and employees, preliminarily and permanently, from further violating Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 and the rules promulgated thereunder;

(d)     Requiring defendants to make prompt and appropriate disclosures to correct the unlawful omissions of a Schedule 13D;

(e)     Requiring defendants to comply with Section 13(d) of the Exchange Act

and the rules thereunder by filing an accurate statement on Schedule 13D;

(f)     Awarding Converium the costs and disbursements of this action together

with reasonable attorneys' fees; and

(g)     Awarding Converium such other and further relief as the Court may deem

just and proper.

Dated: New York, New York
          April 16, 2007
                                        WILLKIE FARR & GALLAGHER LLP


                                        By:_____

                                        Richard L. Posen (RP-3593)
                                        Tariq Mundiya (TM-2246)
                                        Lisa D. Bentley (LB-1565)
                                        787 Seventh Avenue
                                        New York, New York  10019-6099
                                        (212) 728-8000

                                        *Attorneys for Plaintiff Converium Holding AG*