# EXHIBIT C

BAKER & McKENZIE
Postfach, CH-8034 Zürich

BEILAGE 5

# WILLKIE FARR & GALLAGHER

**MEMORANDUM**

## CONFIDENTIAL ATTORNEY CLIENT WORK PRODUCT

TO:     Converium Holding AG (the "Company" or "Converium")

FROM:   Willkie Farr & Gallagher LLP

RE:     Excluding the U.S.

DATED:  March 5, 2007

---

In connection with the proposed offer by SCOR S.A. ("SCOR" or the "Offeror") to acquire Converium via a public tender offer (the "Offer"), we have reviewed the memorandum entitled "Excluding the US" authored by Skadden, Arps, Slate, Meagher & and Flom LLP, counsel to SCOR, in support of SCOR's application to the Swiss Takeover Board to exempt SCOR from Swiss requirements relating to equal treatment of shareholders that would otherwise require SCOR to make the Offer to U.S. persons (the "Skadden Memo"). While we acknowledge that the Skadden Memo accurately summarizes the certain aspects of U.S. law, there are a number of areas where we disagree with their analysis and we fundamentally disagree with their conclusion that compliance with U.S. requirements is too "arduous and disproportionate" to justify extension of the Offer to U.S. persons. In particular, we disagree with the following aspects of the Skadden Memo:

1.  *No substantial delay of the Offer*. On behalf of SCOR, the Skadden Memo argues that it would be too burdensome to extend the Offer to the United States because the process for approval of the documents to be filed with the United States Securities and Exchange Commission ("SEC") would take several months. However, the Skadden Memo itself acknowledges (Skadden Memo, p. 4), that the SEC approval process takes two to three months. We understand that the envisaged end of the Offer period is approximately June 1, 2007. Consequently, the SEC review process can hardly be regarded as a substantial delay. In addition, under SEC rules, although the Offer cannot be completed until the SEC review process is complete, SCOR may commence the Offer following the initial filing with the SEC. Furthermore, SCOR's ability to complete the Offer is subject to insurance regulatory approval in a number of jurisdictions that may well delay the process. Indeed, as far as we know as of the date hereof, SCOR has not yet even filed for insurance regulatory approval in Switzerland or Germany.

2.  *In contrast to the position articulated in the Skadden Memo, the additional burden and costs associated with complying with U.S. rules could not be more benign given that both companies are listed in the U.S.:* In contrast to the position set out in the Skadden Memo, the burden associated with the U.S. tender offer and SEC registration process in the U.S. is actually as benign as it could possibly be for a transaction involving non-U.S. companies. In the case of the SCOR Offer:

    * both companies report in U.S. GAAP (SCOR also reports in IFRS but included full U.S. GAAP financial statements in its most recent Annual Report on Form 20-F filed with the SEC);

Saturn_ WFG response to Skadden memo (3).DOC

- both companies are listed on the NYSE with securities registered under the Securities Exchange Act of 1934, as amended;

- both companies are sufficiently large to rely on the most attractive SEC rules regarding incorporation by reference of prior filings into any registration statement relating to the Offer; and

- both the companies and their auditors and legal advisors have extensive experience dealing with the SEC.

The Skadden Memo also suggests that extending the Offer to the U.S. would require the incurrence of costs associated with the preparation of pro forma financial statements in accordance with U.S. GAAP and IFRS. However, we understand that the presentation of IFRS pro-forma financial information is required in connection with the prospectus to be issued in connection with the capital increase under French law. Thus, the additional burden associated with the preparation of pro-forma financial information really only relates to those required under U.S. GAAP. However, as mentioned above, the consolidated financial statements of Offeror presented in Offeror's filings with the SEC are already prepared in accordance with U.S. GAAP, as are Converium's. Thus, the burden associated with the preparation of those financial statements are vastly less than in a scenario where the companies bases of accounting is different.

3.  *Risk of being subject to U.S. litigation claims for misstatements and omissions is not a proper rationale, particularly in the case of an Offeror that is already subject to those kinds of claims as a consequence of its listing in the U.S.* Offeror asserts that it should not be required to extend the Offer to U.S. Persons because it would have to comply with U.S. laws that forbid misrepresentations and misstatements in offering documents (the "anti-fraud rules") and impose liability for such conduct (Skadden Memo at page 5). However, as a U.S. listed company, SCOR is already subject to the U.S. anti-fraud rules regarding its disclosures. For example, were SCOR to omit to state a material fact in connection with an ordinary course earnings announcement, that omission could well be the subject of the kind of class action that the Skadden Memo suggests is unduly burdensome in connection with Offer. Thus, the risk of bona fide or nuisance litigation is present whether or not SCOR extends the Offer into the U.S. Furthermore, our understanding is that both the Swiss and U.S. regulatory framework, as well as the regulatory regimes in most countries that have sophisticated securities markets, protect investors from offerors who make misstatements and misrepresentations in their offering documents. We find it troubling that SCOR is suggesting that the Swiss regime will be more tolerant of any misrepresentations by SCOR in offering documents if SCOR is not required to file offering materials in the U.S.

4.  *Planned delisting of Offeror is irrelevant.* It is not clear to us why SCOR's plans to delist are relevant to Converium shareholders. While we do not disagree with the characterization of the SEC's statements regarding the proposed deregistration rules in the Skadden Memo at footnote 1, there can be no assurance that the rules will be adopted in the form proposed or on the timetable announced by the SEC. Indeed, although the SEC has announced its intentions regarding the timing of adoption of final

2

Saturn_ WFG response to Skadden memo (3).DOC

rules, it previously announced the proposed rules would be published in the fall of 2006 and the proposed rules were not actually published until the end of December 2006. Furthermore, the deregistration rules are the subject of significant public commentary and the SEC took the unusual step of re-proposing the rules for comment[1], in part due to the level of interest and commentary on the proposals[2]. Thus, it is entirely possible that the SEC may change the rules in such a way that SCOR may not be able to deregister irrespective of the Offer. Equally, the SEC could modify the rules in such a way that the extension of the Offer to U.S. persons would not prohibit deregistration. Indeed, the SEC expressly solicited comment on the criteria for deregistration in the proposing release relating to the new rules.

5. *No possibility for U.S. persons to circumvent the offering restrictions.* In our view, excluding U.S. persons from the Offer while at the same time suggesting that they may participate indirectly would result in violations of the U.S. securities laws. The SEC has previously stated that in the context of tender and exchange offers, "Offerors cannot accomplish indirectly what they purport to not be doing directly." See the adopting release to the SEC rules regarding Cross-Border Tender and Exchange Offers Business Combinations and Rights Offerings (SEC Release No. 33-7759), the relevant extract from which is attached hereto as Annex 1. The Offeror has informed the Swiss Takeover Board, through the pre-announcement, that the Offer is not being directed at U.S. persons, however, at the same time, Offeror's counsel has advised that U.S. persons can take advantage of the Offer by transferring their holdings to a broker or nominee located in Switzerland. We would view this as a violation of the U.S. securities laws and therefore, do not believe that U.S. persons can, as suggested by the Skadden Memo, participate in the Offer indirectly.

    Willkie Farr & Gallagher LLP

---

[1] Typically, the SEC will make a rule proposal, allow time for comments and then adopt final rules reflecting the comments as they deem appropriate. In the case of the deregistration rules, the SEC initially proposed the new rules in December 2005 and then, rather than proposing final rules, re-proposed new rules in December 2006, with meaningful changes from their proposal in December 2005.

[2] The SEC received over 50 comment letters to the 2005 deregistration proposals and an additional 31 comments in connection with the December 2006 proposals.

3