# EXHIBIT D

# WILLKIE FARR & GALLAGHER

**MEMORANDUM**

## CONFIDENTIAL ATTORNEY CLIENT WORK PRODUCT

TO: Converium Holding AG (the "Company" or "Converium")

FROM: Willkie Farr & Gallagher LLP

RE: Excluding the U.S.

DATED: March 20, 2007

---

In connection with the proposed offer by SCOR S.A. ("SCOR" or the "Offeror") to acquire Converium via a public tender offer (the "Offer"), we have reviewed the memorandum entitled "Excluding the US: Further Analysis" authored by Skadden, Arps, Slate, Meagher & and Flom LLP, counsel to SCOR (the "Skadden Response Memo"), as well as Skadden's original memorandum (the "Original Skadden Memo") regarding the same subject. As with the Original Skadden Memo, we acknowledge that the Skadden Response Memo accurately summarizes certain aspects of U.S. law. Nevertheless, we continue to fundamentally disagree with their conclusion that compliance with U.S. requirements is too "arduous and disproportionate" to justify extension of the Offer to U.S. persons. In particular, we have the following observations regarding the Skadden Response Memo:

**I.  Skadden fails to consider the consequences to 23% of Converium's shareholders should they be excluded from the Offer.**

Recent developments suggest that extending the Offer to U.S. persons is even more important now than it was at the time of our initial response (the "Initial Willkie Response") to the Original Skadden Memo. Importantly, we now understand that, as of March 16, 2007, approximately 23% of the outstanding shares of Converium are beneficially owned by U.S. persons. Thus, while the Skadden Response Memo discusses at length the cost of U.S. deregistration and potential litigation risk to SCOR shareholders, it completely ignores the consequences to Converium shareholders should they be excluded from participating in the Offer.

Even assuming the Skadden Response Memo accurately portrays the expense and delay associated with extending the Offer to U.S. persons (a portrayal with which we disagree), the idea that the owners of 23% of the Converium shares (approximately, CHF 700 million of value) would be prohibited from participating in the transaction because SCOR would have to file one more annual report with the SEC, accept potentially incremental litigation risk for misrepresentations and omissions and potentially keep the Offer open beyond June 1 does not seem consistent with equal treatment. We note in this regard that Skadden appears to have accepted the position articulated in the Initial Willkie Response that SCOR may not allow U.S. persons to participate in the Offer indirectly to the extent that it is purporting to exclude them.

Saturn_ WFG response to second Skadden memo (2).DOC

II. **Skadden did not dispute our view that the additional burden and costs associated with complying with U.S. rules could not be more benign given that both companies are listed in the U.S.**

Skadden does not appear to dispute our view that the burden associated with the U.S. tender offer and SEC registration process in the U.S. is actually as benign as it could possibly be for a transaction involving non-U.S. companies. In the case of the SCOR Offer:

- both companies report in U.S. GAAP (SCOR also reports in IFRS but included full U.S. GAAP financial statements in its most recent Annual Report on Form 20-F filed with the SEC);

- both companies are listed on the NYSE with securities registered under the Securities Exchange Act of 1934, as amended;

- both companies are sufficiently large to rely on the most attractive SEC rules regarding incorporation by reference of prior filings into any registration statement relating to the Offer;

- the prospectus to be issued in connection with the SCOR capital increase under French law requires much of the same information (including pro forma financial information) that would be required in a U.S. registration statement as it must comply with the EU Prospectus Directive[1]; and

- both the companies and their auditors and legal advisors have extensive experience dealing with the SEC.

III. **Deregistration.**

As indicated in the Initial Willkie Response, we do not disagree with the characterization of the SEC's statements regarding the timetable for deregistration. Nor do we disagree with the notion that deregistration can be an effective cost-saving measure. However, the impact of one year of additional SEC reporting costs pale in comparison to excluding 23% of the Converium Shareholders from the Offer. Moreover, the Skadden Response Memo overstates by at least $20 million the excess cost of extending the Offer to U.S. persons when it suggests at page 4 that "If the TOB permits SCOR to exclude the Offer from the US... SCOR and Converium will save $31.2 million over the next few years..." That $31.2 million number includes $20 million of identified cost savings that Converium set out in the slide "Roadmap to 14% ROE in 2009." However, it is simply not correct to suggest that the extension of the Offer will impair the ability of Converium to secure those savings as Converium had assumed in calculating the savings figure that it would file

---

[1] Although we note that there are incremental disclosure requirements under U.S. law which were identified in the Original Skadden Memo, both the French prospectus requirements and the SEC Form 20-F (the principal building block for the disclosure required in connection with the U.S. prospectus that would be required should SCOR comply with the U.S. registration requirements for the Offer) are based on International Organization of Securities Commissions, referred to as IOSCO, disclosure requirements. Thus, there is substantial overlap in the information required.

2

Saturn_ WFG response to second Skadden memo (2).DOC

its 2006 Annual Report on Form 20-F with the SEC irrespective of whether the new SEC rules are adopted as proposed. Thus, while we agree that the extension of the Offer to US persons would result in an incremental year of reporting for SCOR, it has no impact on the $20 million of savings identified by Converium.

### IV. No substantial delay of the Offer

As we mentioned in the Initial Willkie Response, Skadden itself acknowledges that the SEC approval process generally takes two to three months. Thus, the SEC review process can hardly be regarded as a substantial delay in a transaction that remains subject to regulatory approval, where a prospectus is required to be prepared in accordance with the requirements of the EU Prospectus Directive and SCOR may commence the Offer following an initial filing with the SEC (the SEC review of SCOR's U.S. filing need only be complete prior to the expiration of the Offer).

### V. Incremental Litigation Risk is Impossible to Estimate

Although the Skadden Response Memo discusses at great length the differing standards of liability under the U.S. securities law and suggests that if the Offer is extended into the U.S., SCOR will be exposed to significant and costly litigation risks due the enhanced risk of liability under Section 11 of the U.S. Securities Act of 1933, the bottom line is that SCOR is, as Skadden acknowledges, already subject to U.S. litigation risk for both bona fide and nuisance litigation claims. Yes, as Skadden suggests, the standards of liability differ under Section 11 and Section 10b-5, but the risk of litigation is present whether or not SCOR extends the offer into the U.S. and it is impossible to estimate the incremental risk associated with a claim under Section 11 from one brought under Section 10b-5. Indeed, in a matter unrelated to the Offer, Converium is the subject of a U.S. class action lawsuit where the plaintiffs alleged both Section 11 and Section 10b-5 claims and the Section 11 claims were dismissed while the Section 10b-5 claims are still pending.

Willkie Farr & Gallagher LLP

3