UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CONVERIUM HOLDING AG,

|  |  |  |
|---|---|---|
|  | : | 07 Civ. 3042 (GEL) |
| Plaintiff, |  |  |
|  | : | Electronically Filed |
| - against – |  |  |
|  | : |  |
| SCOR S.A. AND PATINEX A.G., |  |  |
|  | : |  |
| Defendants. |  |  |

--------------------------------------------------------x

# DEFENDANT SCOR S.A.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Jay B. Kasner (JK-7910)
Joseph N. Sacca (JS-9435)
Lea Haber Kuck (LK-5556)
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendant SCOR S.A.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 7

    A.    The Parties ................................................................................................ 7

    B.    SCOR Files Its Schedule 13D with the SEC ........................................... 8

    C.    SCOR Announces the Offer ..................................................................... 8

    D.    The Swiss Takeover Board is Evaluating the Offer ............................... 9

ARGUMENT ................................................................................................................. 9

I.  Converium's Section 14(d) Claim Fails As a Matter of Law ............................. 9

    A.    Converium has failed to allege that SCOR used the jurisdictional means
           contemplated by Section 14(d)(1) ....................................................... 12

          1.    Allegations of U.S. media or analyst publicity are insufficient to
                trigger application of the Williams Act .................................... 13

          2.    Converium's allegation that unsolicited U.S. persons will find a
                way to tender into the offer does not trigger application of the
                Williams Act .......................................................................... 14

          3.    Converium's allegation that SCOR and Converium have securities
                listed on the New York Stock Exchange is irrelevant .............. 15

          4.    The size of Converium's U.S. shareholder base has no bearing on
                whether SCOR used the jurisdictional means contemplated by
                Section 14(d)(1) ..................................................................... 15

    B.    SCOR's open-market purchases of Converium stock do not constitute a
           use of the jurisdictional means contemplated by Section 14(d)(1) ...................... 17

II.  Converium's Section 14(e) Claim Also Fails As a Matter of Law................................... 19

III. Converium Has Not Adequately Alleged that SCOR Violated Section 13(d) ................ 20

    A.    Conclusory allegations that defendants are acting as a group are
           insufficient................................................................................................ 20

    B.    Converium has failed to allege any irreparable harm .......................................... 21

CONCLUSION ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

### CASES

American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.,
 351 F. Supp. 2d 79 (S.D.N.Y. 2004) ............................................................... 7

Amron v. Morgan Stanley Investment Advisors, Inc.,
 464 F.3d 338 (2d Cir. 2006) ........................................................................... 7

Bally Total Fitness Holding Corp. v. Liberation Investments, L.P.,
 No. Civ. A. 05-841-JJF, 2005 WL 3525679 (D. Del. Dec. 22, 2005) ........................... 23

Beaumont v. America Can Co.,
 621 F. Supp. 484 (S.D.N.Y. 1985) ................................................................ 17

Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir. 1985) ................................. 5, 20

Brascan Ltd. v. Edper Equities Ltd., 477 F. Supp. 773 (S.D.N.Y. 1979) ...................... 17

Consolidated Gold Fields PLC v. Minorco, 871 F.2d 252 (2d Cir. 1989) ................. 19-20

E.ON AG v. Acciona, S.A.,
 No. 06 Civ. 8720, 2007 U.S. Dist. LEXIS 7771 (S.D.N.Y. Feb. 5, 2007) ............. 6, 22

E.ON AG v. Acciona, S.A., 468 F. Supp. 2d 559 (S.D.N.Y. 2007) ........................... 5, 18

Electric Specialty Co. v. International Controls Corp., 409 F.2d 937 (2d Cir. 1969) .................. 2

In re Global Crossing Sec. Litigation, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ................ 7

Hanson Trust PLC v. SCM Corp., 774 F.2d 47 (2d Cir. 1985) ................................ 18

Independence Fed'l Savings Bank v. Bender, 332 F. Supp. 2d 203 (D.D.C. 2004) .................. 22

John Labatt Ltd. v. Onex Corp., LBT, 890 F. Supp. 235 (S.D.N.Y. 1995) ........... *passim*

Log On. America, Inc. v. Promethean Asset Management L.L.C.,
 223 F. Supp. 2d 435 (S.D.N.Y. 2001) ........................................................... 21

Ludlow Corp. v. Tyco Laboratoriess, Inc.,
 No. 81-1640-Z, 1981 WL 1717 (D. Mass. July 2, 1981) ................................. 19

Panter v. Marshall Field & Co., 646 F.2d 271 (7th Cir. 1981) ................................ 19

Plessey Co. plc v. General Electric Co., 628 F. Supp. 477 (D. Del. 1986) ........... *passim*

Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146 (S.D.N.Y. 2004) .................................7

Rondeau v. Mosinee Paper Corp., 422 U.S. 49 (1975)........................................................ 1, 2, 14

Roth v. Jennings,
    No. 03-CV-7760, 2006 U.S. Dist. LEXIS 4266 (S.D.N.Y. Feb. 1, 2006) .....................21

Seaboard World Airlines, Inc. v. Tiger International, Inc., 600 F.2d 355 (2d Cir. 1979) ..............1

Seybold v. Groenink,
    No. 06 Civ. 772 (DLC), 2007 WL 737502 (S.D.N.Y. March 12, 2007) .........................3

Stromfeld v. Great Atlantic & Pacific Tea Co., Inc.,
    496 F. Supp. 1084 (S.D.N.Y. 1980 ...................................................................... 3, 14, 22

Trans World Corp. v. Odyssey Partners, 561 F. Supp. 1315 (S.D.N.Y. 1983)...........................21

Treadway Cos., Inc. v. Care Corp., 638 F.2d 357 (2d Cir. 1980) ....................................... 2, 6, 23

Vogt v. Greenmarine Holding, LLC, 318 F. Supp. 2d 136 (S.D.N.Y. 2004) ................................7

Wellman v. Dickinson, 475 F. Supp. 783 (S.D.N.Y. 1979)..........................................................19

## STATUTES

15 U.S.C. § 78n(d-e) .............................................................................................................. *passim*

17 C.F.R. § 240.14d-10....................................................................................................... 10

17 C.F.R. § 240.13e-4(h)(8) ................................................................................................ 16

15 U.S.C. § 78m(d) ...............................................................................................................5

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1

## MISCELLANEOUS

Cross Border Tender and Exchange Offers, Business Combinations and Rights Offerings,
    Securities Act Release No. 7759, Exchange Act Release No. 33- 7759, 70 SEC
    Docket 2191 (Oct. 22, 1999) ................................................................................ 10, 16

SEC Division of Corporate Finance: Manual of Publicly Available Telephone
    Interpretations G (July 2001) .........................................................................................10

Ellen J. Odoner & Catherine Dixon, "The SEC's New Cross-Border Exemptions:
    Reducing the Regulatory Barriers to U.S. Participation in Foreign Takeovers,"
    1306 PLI/CORP. 293, 328 (2002)..................................................................................16

Defendant SCOR S.A. ("SCOR") respectfully submits this Memorandum of Law in support of its motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Through this action, Converium Holding AG ("Converium"), a Swiss corporation, seeks to impede the public tender offer made in Switzerland by SCOR, a French corporation, for shares of Converium that are held solely by non-U.S. shareholders (the "Offer") by attempting to subject this entirely foreign Offer to the disclosure requirements of the United States securities laws governing tender offers in the United States (the "Williams Act").[1] Converium's effort to invoke the Williams Act fails as a matter of law because its complaint lacks a single factual allegation sufficient to support its contention that SCOR extended the Offer to United States shareholders using the jurisdictional means contemplated by Section 14(d)(1) of the Securities Exchange Act of 1934 (the "Exchange Act") – i.e., by making a tender offer into the United States "directly or indirectly, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise."  15 U.S.C. § 78n(d)(1).

It is well-settled that the Williams Act is designed to ensure that those in the United States who are actually solicited to sell their shares are given adequate information on which to base their decision, Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 58 (1975), and not to serve as "'a tool for incumbent management to protect its own interests against the desires and welfare of the stockholders.'"  Seaboard World Airlines, Inc. v. Tiger Int'l, Inc., 600 F.2d 355,

---

[1]    The Williams Act introduced numerous amendments to the Securities Exchange Act of 1934 (the "Exchange Act"), but the only provisions Converium alleges apply to the Offer are Sections 14(d) and 14(e), 15 U.S.C. §§ 78n(d-e).

1

363 (2d Cir. 1979) (quoting <u>Elec. Specialty Co. v. Int'l Controls Corp.</u>, 409 F.2d 937, 948 (2d Cir. 1969) (Friendly, J.)).  In fact, in enacting the Williams Act, "'Congress expressly disclaimed an intention to provide a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts.'" <u>Treadway Cos., Inc. v. Care Corp.</u>, 638 F.2d 357, 380 (2d Cir. 1980) (quoting <u>Rondeau</u>, 422 U.S. at 58).  For the reasons discussed below, this Court should not countenance Converium's attempt to entrench its management by invoking the Williams Act in response to a tender offer that has not been disseminated into the United States and that by its own terms does not ask U.S. shareholders to make any decisions or take any action in response to it.

As Judge Pollack observed, there can be no dispute that a tender offer excluding United States shareholders is entirely permissible under the Williams Act.  <u>See</u> <u>John Labatt Ltd. v. Onex Corp., LBT</u>, 890 F. Supp. 235, 245 (S.D.N.Y. 1995) (Pollack, J.); <u>see also</u> <u>Plessey Co. plc v. Gen. Elec. Co. plc</u>, 628 F. Supp. 477, 494-95 (D. Del. 1986).  Indeed, the Securities and Exchange Commission (the "SEC") has explicitly recognized that the exclusion of U.S. shareholders from foreign tender offers is common practice, and has even set forth guidance educating foreign offerors on how to do so without triggering application of the Williams Act. (<u>See</u> <u>infra</u> at 10.)  Rather than focus on SCOR's conduct with respect to the Offer, which both the applicable case law and SEC guidance establish to be the appropriate area of inquiry in assessing whether an offeror has used the Williams Act's jurisdictional means, Converium directs its attention elsewhere, alleging in its complaint that because (i) the Offer has garnered widespread attention from the media and securities analysts in the United States; (ii) sophisticated U.S. investors may find a way to tender into the Offer; (iii) both SCOR and Converium have

American Depository Shares[2] listed on the New York Stock Exchange; and (iv) a sizeable percentage of Converium's shares are held by U.S. shareholders (Compl. ¶¶ 3, 53), the disclosure requirements of the Williams Act apply.

Notably, these allegations – which could be asserted in the wake of virtually every foreign tender offer made by any company of substantial size or stature – fail to identify any act by SCOR directed towards the U.S., much less one that constitutes use of the jurisdictional means of Section 14(d)(1), and they thus fail to state a claim as a matter of law.  First, "[n]othing in the U.S. securities laws requires a foreign tender offeror to exclude U.S. press coverage in order to avoid U.S. regulation of its foreign offer."  Labatt, 890 F. Supp. at 245.  In addition, the Williams Act was enacted to ensure that U.S. investors who are solicited receive adequate information on which to decide whether to tender their shares – the Act was not designed to protect those shareholders who choose to tender their shares absent any solicitation, as would necessarily be the case if any of Converium's U.S. holders attempt to tender shares into the Offer. See, e.g., Plessey, 628 F. Supp. at 488 ("[T]he Williams Act seeks to protect only those shareholders who face the tender decision.") (emphasis added); Stromfeld v. Great Atlantic & Pacific Tea Co., 496 F. Supp. 1084, 1088 (S.D.N.Y.) (the Williams Act is inapplicable where "plaintiffs . . . were never 'confronted with a tender offer' and they were never placed in a position where they were 'required to respond (to a tender offer) without adequate information'"), aff'd, 646 F.2d 563 (2d Cir. 1980).

---

[2]    "In order for a foreign corporation to trade on an American stock exchange, the foreign corporation must issue and deposit American Depository Shares ('ADSs') with an American financial institution.  The depository institution then issues American Depository Receipts ('ADRs') to the beneficial owners of the ADSs, who may sell the ADSs on American securities exchanges. The ADR system is the means by which American investors hold and trade equity interests in foreign companies." Seybold v. Groenink, No. 06 Civ. 772 (DLC), 2007 WL 737502, at *1 n.1 (S.D.N.Y. March 12, 2007).

Moreover, in Plessey, the court held the Williams Act inapplicable to a foreign tender offer notwithstanding the fact that American Depository Receipts representing interests in shares of both the offeror and the target company were traded in the United States. See Plessey, 628 F.Supp. at 480. The logic for this is obvious – the fact that an offeror and target may previously have registered securities for trading in the U.S. says nothing about whether the offeror subsequently used the jurisdictional means contemplated by the Williams Act in connection with a tender for shares of the target excluding those registered or held in the U.S.

Finally, the alleged size of Converium's U.S. shareholder base has nothing to do with the threshold issue of whether SCOR made a tender offer to U.S. shareholders "by use of the mails or by any means or instrumentality of interstate commerce." And even if the size of Converium's U.S. shareholder base had any relevance in the context of determining whether SCOR used the jurisdictional means of the Williams Act (which it does not), Converium's complaint would remain deficient because it fails to allege the percentage of Converium stock owned by U.S. persons at any time before the Offer was announced. As the SEC has noted in the somewhat analogous context of cross-border tender offers made into the United States and thus subject to the Williams Act, the percentage of U.S. ownership of a target company must be measured (for the purposes of determining which sub-set of regulations applies) as of a date before the offer is commenced because intervening arbitrage activity and other factors will dramatically alter this percentage following the announcement. (See infra at 16.) Accordingly, Converium's allegation that nearly eight weeks after the announcement of the Offer, "22% of Converium's registered shares are held by US shareholders" (Compl. ¶ 3), would be wholly irrelevant here even if the size of Converium's U.S. shareholder base could properly trigger application of the Williams Act.

Although not alleged in the Complaint, Converium's counsel asserted during the April 19, 2007 hearing in this action that it is "highly unlikely" that SCOR's pre-Offer open-market purchases of Converium stock were made entirely outside the United States, and argued that Judge Cote's recent decision in E.ON AG v. Acciona, S.A., 468 F. Supp. 2d 559 (S.D.N.Y. 2007), stands for the proposition that any pre-Offer open-market purchases by SCOR in the United States would constitute use of the Williams Act's jurisdictional means. (4/19/07 Tr. at 4-5). This argument is fatally flawed. First, its hypothesized factual predicate is flatly contradicted by the Schedule 13D SCOR filed on February 21, 2007 – of which the Court may take judicial notice on this motion. This Schedule 13D – which is the very document that forms the basis of Converium's Section 13(d) claim – reveals that all of SCOR's open-market purchases occurred on the SWX Swiss Exchange. (Declaration of Joseph N. Sacca, dated April 30, 2007 ("Sacca Decl."), Ex. A, Item 5.) Second, E.ON did not involve open market purchases at all, much less open market purchase preceding a tender offer. Rather, the case addressed whether a "block trade" in lieu of an official tender offer accomplished through direct solicitation of U.S. shareholders constituted a tender offer within the meaning of the Williams Act. E.ON, 468 F. Supp. 2d at 566-67.

When "'a court is confronted with transactions that on any view are predominantly foreign, it must seek to determine whether Congress would have wished the precious resources of United States courts and law enforcement agencies to be devoted to them rather than leave the problem to foreign countries.'" Plessey, 628 F.Supp. at 491 (quoting Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 985 (2d Cir. 1985) (Friendly, J.)). Given the absence of allegations in the complaint that SCOR directed any conduct towards the United States, Converium's attempt to invoke the Williams Act here seeks to render the Act's threshold requirement that an offeror use

5

the statute's jurisdictional means before being subjected to its disclosure requirements essentially meaningless. Under Converium's expansive view, the Williams Act could be invoked by virtually any foreign company targeted by a foreign bidder in a foreign offer as a means to buy time in which to employ defensive tactics. Congress never intended the federal securities laws to be used in this fashion.

Converium has also asserted a claim against SCOR for violation of Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), for SCOR's purported failure to disclose it is acting as a "group" with defendant Patinex A.G. ("Patinex") even while conceding in its complaint that SCOR disclosed the existence of the Share Purchase Agreement ("SPA") it executed with Patinex, as well as all of its other acquisitions of Converium's stock, in the Schedule 13D SCOR filed on February 21, 2007. (Compl. ¶ 23; Sacca Decl. Ex. A.) Thus, even if Converium's allegations that SCOR failed timely to disclose that it was acting as a group with Patinex were not far too conclusory to state a claim (which they are (see infra at 20-21)), Converium's Section 13(d) claim would still fail as a matter of law because "the information relevant to the takeover battle which Section 13(d) requires to be disclosed, has been disclosed." E.ON AG v. Acciona, S.A., No. 06 Civ. 8720, 2007 U.S. Dist. LEXIS 7771, at *33 (S.D.N.Y. Feb. 5, 2007); see also Treadway, 638 F.2d at 380 (the "informative purpose of 13(d) had . . . been fulfilled" where shareholders had months to contemplate a potential takeover).

Accordingly, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS[3]

### A.    The Parties

Plaintiff Converium is a multi-line reinsurance corporation organized and existing under the laws of Switzerland, with its principal place of business located at Dammstrasse 19, CH-6301, Zug, Switzerland.  (Compl. ¶ 15.)  Shares of Converium's common stock are listed on the SWX Swiss Exchange and American Depository Shares of Converium's stock are listed on the New York Stock Exchange.  (Id. ¶ 16.)

Defendant SCOR is a multi-line reinsurance corporation organized and existing under the laws of France, with its principal place of business located at 1, avenue du General de Gaulle, 92 800, Puteaux, France.  (Id. ¶ 17.)  Shares of SCOR's common stock are listed on the Euronext Paris and American Depository Shares of SCOR's stock are listed on the New York Stock Exchange.  (Id.)

Defendant Patinex is an investment company with its corporate headquarters in Wilen, Switzerland.  (Id. ¶ 18.)  Prior to entering into a Share Purchase Agreement with SCOR, Patinex owned approximately 19.8% of the outstanding shares of Converium stock.  (Id. ¶ 21.)

---

[3]    This statement of facts is drawn from the allegations of the complaint and from the documents to which the complaint refers.  See In re Global Crossing Sec. Litig., 322 F. Supp. 2d 319, 327-28 (S.D.N.Y. 2004) ("[w]hen deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference," as well as "take judicial notice of public disclosure documents filed with the SEC").  Although when deciding a motion to dismiss under Rule 12(b)(6) "the Court must accept as true all well-pleaded factual allegations in the complaint," Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 152 (S.D.N.Y. 2004), it must dismiss a complaint where "plaintiff's allegations are doomed to fail under any available legal theory."  Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 343 (2d Cir. 2006).  In addition, to survive a motion to dismiss, a plaintiff must allege "facts necessary to a finding of liability . . . bald assertions and conclusions of law will not suffice."  Id. at 343-44 (emphasis in original); see also Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 351 F. Supp. 2d 79, 92 n.11 (S.D.N.Y. 2004) ("[T]he Court need not and does not accept the truth of factual allegations couched as legal conclusions."); Vogt v. Greenmarine Holding, LLC, 318 F. Supp. 2d 136, 139 (S.D.N.Y. 2004) ("'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss'") (citation omitted).

### B.    SCOR Files Its Schedule 13D with the SEC

On February 21, 2006, SCOR filed a Schedule 13D with the SEC disclosing that (i) "SCOR will acquire 29,020,350 Shares, or approximately 19.8% of [Converium's] share capital, pursuant to the terms . . . set forth in the Share Purchase Agreement entered into between SCOR and Patinex AG on February 16, 2007"; (ii) "SCOR will acquire 7,100,000 Shares, or approximately 4.8% of [Converium's] share capital, pursuant to the terms . . . set forth in the Share Purchase Agreement entered into between SCOR and Alecta pensionsforsakring on February 18, 2007"; and (iii) SCOR had "purchased 12,200,000 Shares [or approximately 8.3% of Converium's outstanding share capital] in open-market transactions on the SWX Swiss Exchange."  (Sacca Decl. Ex. A, Item 6.)  SCOR's Schedule 13D, which attached the two Share Purchase Agreements as exhibits, also stated that "following the consummation of the acquisition of the Shares under the Share Purchase Agreements, [SCOR] will hold in the aggregate approximately 32.9% of [Converium's] issued share capital."  (Id.)

### C.    SCOR Announces the Offer

As required by Swiss law, on February 26, 2007, SCOR issued a formal pre-announcement stating that it intended to launch a public tender offer for Converium's shares held by non-U.S. shareholders.  This pre-announcement bore a legend in bold typeface at the top of the first page stating: "**Not for Distribution or Publication In or Into the United States of America.**"  In addition, the pre-announcement contained the following language:

> The Offer will not be made in or into the United States of America and may only be accepted outside the United States.  Accordingly, copies of this pre-announcement are not being made and should not be mailed or otherwise distributed or sent in, into or from the United States, and persons receiving this pre-announcement (including custodians, nominees and trustees) must not distribute or send them into or from the United States.  The Offer will not be extended to American Depository Shares representing rights to receive Converium Shares.  These materials are not an offer of securities for sale in the United States. . . . SCOR will not register or offer its securities, or otherwise conduct the Offer, in the United States or to U.S. persons.

(Sacca Decl. Ex. B at 6-7 (emphasis added); see also Compl. ¶ 29.)

On April 5, 2007, SCOR issued an Offer Prospectus, which is also required by Swiss law.  The first page of the Offer Prospectus provided as follows:

> This Offer Prospectus does not constitute an offer to sell or a solicitation of an offer to buy securities in the United States or to or from U.S. persons and the Offer will not be made in or into the United States and may not be accepted by U.S. persons or persons in the United States.  Accordingly, copies of this Offer Prospectus are not being made available and should not be mailed or otherwise distributed or sent in, into or from the United States, and persons receiving this Offer Prospectus (including custodians, nominees and trustees) must not distribute or send them into or from the United States. Shareholders of Converium who accept the Offer will, unless otherwise agreed by SCOR, be deemed to certify they are not located in the United States and are not U.S. persons.

(Sacca Decl. Ex. C at 1 (emphasis added); see also Compl. ¶ 29.)

**D.     The Swiss Takeover Board is Evaluating the Offer**

Pursuant to Swiss law, the Swiss Takeover Board (the "STB") is in the process of evaluating whether the Offer complies with Swiss law.  (See Sacca Decl. Ex. C at 1 ("The Offer and this Offer Prospectus are subject to review and approval by the Swiss takeover authorities who may order changes or amendments to the Offer or this Offer Prospectus.").)  Included among the issues before the STB is whether to permit SCOR to exclude U.S. shareholders from the Offer.  (See Compl. ¶ 33.)

## ARGUMENT

## CONVERIUM'S COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY

**I.     CONVERIUM'S SECTION 14(d ) CLAIM FAILS AS A MATTER OF LAW**

Converium alleges SCOR violated Section 14(d) of the Exchange Act by failing to "file tender offer materials under the Exchange Act" and by excluding from the Offer all United States persons holding shares of Converium stock and holders of Converium's American

Depository Shares.[4]  (See Compl. ¶¶ 53-54.)  As a preliminary matter, it is entirely lawful for foreign offerors to exclude U.S. persons from a tender offer.  Not only have courts that have considered the issue held there to be nothing improper about this practice, see Labatt, 890 F. Supp. at 245; Plessey, 628 F.Supp. at 488, the SEC also has recognized the practice to be legal and common.  See Cross-Border Tender and Exchange Offers, Business Combinations and Rights Offerings, Securities Act Release No. 7759, Exchange Act Release No. 33, 7759, 70 SEC Docket 2191 (Oct. 22, 1999), available at 1999 WL 969592, at *2 ("U.S. security holders are often excluded from tender and exchange offers . . . .").  In addition, the SEC has even offered guidance on how foreign issuers can exclude U.S. persons without triggering application of the Williams Act by outlining various precautionary measures foreign offerors can take to minimize the chances of soliciting U.S. shareholders.  See id. at *25.  Further, in its July 2001 "telephone interpretations" of Release No. 7759, the SEC set out the following question and answer:

> Q:  If a foreign private issuer conducts a tender offer that excludes U.S. security holders, may it furnish the tender offer materials under cover of Form 6-K without becoming subject to the U.S. tender offer rules?
>
> A:  The materials may be furnished to the Commission without triggering the applicability of the U.S. tender offer rules so long as the issuer takes steps to assure holders that the information is not used as a means to induce indirect participation by U.S. holders of the securities. . . . The materials also must prominently disclose that the offer is not available to U.S. persons or is being made only in countries other than the U.S.  Further, the issuer must take precautionary measures that are reasonably designed to ensure that the offer is not targeted to persons in the United States or to U.S. persons.

SEC Division of Corp. Finance: Manual of Publicly Available Telephone Interpretations § G (July 2001), available at 2001 WL 34789992.

---

[4]   Although Converium alleges that SCOR's exclusion of U.S. holders from the Offer violates Rule 14d-10, 17 C.F.R. § 240.14d-10, an SEC regulation promulgated under the Williams Act which requires tender offers to be made to all holders of a class of securities on equal terms (Compl. ¶ 5), Converium cannot use this contention to support application of the Williams Act.  That would put the cart before the horse – Rule 14d-10 applies only if the Williams Act applies, not the other way around.

Accordingly, Converium cannot maintain a claim for violation of Section 14(d) merely because SCOR has excluded U.S. persons from the Offer; instead, it must adequately allege that SCOR made a tender offer to United States shareholders using the jurisdictional means contemplated by Section 14(d)(1) of the Exchange Act – i.e., "directly or indirectly, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise." 15 U.S.C. § 78n(d)(1). Indeed, courts have refused to apply the Williams Act to foreign tender offers absent a showing that a tender offer was made to U.S. shareholders using the jurisdictional means contemplated by Section 14(d)(1).

In Plessey, a British company launched a tender offer in England for the shares of another British company held solely by non-U.S. shareholders. 628 F Supp. at 480. The target company sued the offeror for failing to comply with the disclosure requirements of Sections 14(d) and 14(e), arguing that these requirements were triggered by virtue of the fact that the tender offer attracted widespread press coverage in the United States and that news of the offer also reached the United States through a mailing the target company distributed to its shareholders. Id. at 480-83. In rejecting these arguments, the court held that "second hand news accounts not directly attributable to the bidder" and the fact that the "target engaged in jurisdiction triggering conduct that the bidder had carefully avoided" were not sufficient to invoke the Williams Act. Id. at 490, 494-95 (emphasis added). In focusing on the conduct of the offeror, the court held "where a foreign bidder has steadfastly avoided American channels in its pursuit of a foreign target, the American interest in extensive disclosure appears minimal." Id. at 495.

Similarly, in Labatt, a Canadian target company asserted claims under the Williams Act against a Canadian bidder in connection with a tender offer that excluded U.S. shareholders. 890 F. Supp. at 244. Judge Pollack held: "Where, as here, a tender offer is totally

11

foreign and neither solicits nor will accept tenders by U.S. shareholders, it is not a tender offer directed to U.S. shareholders and the threshold jurisdictional requirement of [the Williams Act] is not met." Id. at 245 (citing Plessey, 625 F. Supp. 477). The target in Labatt unsuccessfully tried to overcome its inability to identify conduct of the offeror directed to the United States by arguing that the exclusion of U.S. holders from the offer "is just being done with a very big wink," i.e., that notwithstanding the offeror's statement that the offer excluded U.S. holders, it actually sought their participation.[5] Id. at 245. The court rejected this argument, holding that the Williams Act is "designed to ensure that shareholders confronted with a tender offer have adequate and accurate information" and thus "[w]here shareholders are never presented with the critical decision of whether or not to tender," the Williams Act may not be invoked. Id.

        In short, as this Court observed during the April 19, 2007 hearing, the essential question on Converium's Section 14(d) claim is "what, if anything, SCOR did that could be characterized as a use of the means of interstate commerce with the meaning of the Williams Act." (4/19/07 Tr. at 25.) And, as described below, despite parroting the language of the Williams Act in its complaint (see Compl. ¶ 49), Converium fails to allege any facts supporting its legal conclusion that SCOR made a tender offer to United States shareholders using the jurisdictional means contemplated by Section 14(d)(1), and thus Converium's Section 14(d) claim fails as a matter of law.

    **A.**    **Converium has failed to allege that SCOR used the jurisdictional means contemplated by Section 14(d)(1)**

        Converium argues that SCOR used the jurisdictional means contemplated by Section 14(d)(1) because (i) the Offer has garnered widespread attention from media and

---

[5]   Converium has set forth this same discredited argument here, contending at the April 19, 2007 hearing before this Court that SCOR's exclusion of U.S. holders from the Offer comes with a "wink and nod." (4/19/07 Tr. at 9.)

securities analysts in the United States; (ii) sophisticated U.S. investors may find a way to tender

into the Offer; (iii) both SCOR and Converium have American Depository Shares listed on the

New York Stock Exchange; and (iv) a sizeable percentage of Converium's registered shares are

held by U.S. shareholders (Compl. ¶¶ 3, 53).  These meager allegations, considered alone or

taken together, are insufficient to support a claim that SCOR has used the jurisdictional means of

the Williams Act.

### 1.    Allegations of U.S. media or analyst publicity are insufficient to trigger application of the Williams Act

Converium's allegation that "the Offer has generated widespread media and

analyst publicity in the United States" (Compl. ¶ 53; see also id. ¶ 31), even taken as true, is

insufficient as a matter of law to trigger application of the Williams Act.  As Judge Pollack held

in Labatt, "[n]othing in the U.S. securities laws requires a foreign tender offeror to exclude U.S.

press coverage in order to avoid U.S. regulation of its foreign offer."  890 F. Supp. at 245.  The

weakness of Converium's complaint is further highlighted by its failure (and inability) to allege

that SCOR directed any of its offering materials into the U.S.[6]  See id. at 245-46 ("'[W]here a

foreign bidder has steadfastly avoided American channels in its pursuit of a foreign target, the

American interest in extensive disclosure appears minimal.  Where the only acts within the

United States are second hand news accounts not directly attributable to the bidder, the American

contact which would justify exercise of jurisdiction is relatively small and counsels against its

use.'") (quoting Plessey, 628 F. Supp. at 495).  Indeed, Converium concedes that SCOR's

---

[6]    To be sure, Converium has elected to communicate with its U.S. shareholders by filing a statement with the SEC on Schedule 14D-9.  (Compl. ¶ 38.)  But as the Plessey court held, the target of an offer cannot create jurisdiction under the Williams Act through its own conduct.  Plessey, 628 F. Supp. at 490.

offering materials explicitly state they are not to be distributed into the United States in any fashion whatsoever.  (Compl. ¶ 29.)[7]

### 2.    Converium's allegation that unsolicited U.S. persons will find a way to tender into the offer does not trigger application of the Williams Act

Similarly, Converium's allegation that "SCOR has candidly admitted that US persons will tender into the Offer" (Compl. ¶ 53) is also insufficient to invoke the Williams Act. This "admission" is nothing more than a plain acknowledgment of the reality that sophisticated U.S. investors who wish to do so will find a way to participate in foreign offers through intermediaries notwithstanding precautions taken by an offeror to ensure that these investors do not receive solicitations.  But the focus of the Williams Act's jurisdictional means test is on the conduct of the offeror – i.e., whether it used the means of interstate commerce – and not on the conduct of investors who might choose to act in the absence of a solicitation directed to them. See, e.g., Rondeau, 422 U.S. at 58 ("The purpose of the Williams Act is to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications of the offering party.") (emphasis added); Plessey, 628 F. Supp. at 488 ("[T]he Williams Act seeks to protect only those shareholders who face the tender decision.") (emphasis added); Stromfeld, 496 F. Supp. at 1088 (the Williams Act is not applicable where "plaintiffs . . . were never 'confronted with a tender

---

[7]    Although not alleged in the Complaint (and thus irrelevant for the purposes of this motion), Converium's counsel suggested during the April 19, 2007 hearing that SCOR's website is part of "the wink and nod effort to announce a bid."  (4/19/07 Tr. at 9.)  But Converium's counsel failed to tell the Court that in order to access any information regarding the Offer on SCOR's webpage, users must acknowledge that they have read a disclaimer stating "the Offer will not be made in or into the United States and may not be accepted by U.S. persons" and enter both their country of residence and current physical location.  See SCOR's website, available at http://www.scor.com/www/index.php?id=350&L=2.  If the user enters the United States in one or both fields, he is not permitted to review the offering materials and the following message is displayed: "Not for distribution in the USA, Canada, Australia or Japan."  The SEC has made it clear that posting offering materials on a website does not trigger application of the Williams Act "so long as the offeror implement[ed] precautionary measures that [were] reasonably designed to ensure that the Internet offer [was] not targeted to persons in the United States or to U.S. persons."  Release 7759, supra, at *25.

offer' and they were never placed in a position where they were 'required to respond (to a tender offer) without adequate information'").

### 3. Converium's allegation that SCOR and Converium have securities listed on the New York Stock Exchange is irrelevant

Converium's allegation that "both SCOR and Converium have securities listed on the New York Stock Exchange" (Compl. ¶ 53) is entirely irrelevant to the inquiry into whether the Williams Act applies. In fact, the <u>Plessey</u> court held the Williams Act inapplicable to a foreign tender offer notwithstanding the fact that American Depository Receipts representing interests in shares of both the offeror and the target company were traded in the United States. <u>See</u> <u>Plessey</u>, 628 F.Supp. at 480. For obvious reasons, allegations that an offeror and target may previously have registered securities for trading in the U.S. do nothing to support the conclusion that the offeror subsequently made a tender offer to U.S. shareholders of the target using the jurisdictional means contemplated by the Williams Act where the Offer by its terms expressly excludes those U.S. shareholders.

### 4. The size of Converium's U.S. shareholder base has no bearing on whether SCOR used the jurisdictional means contemplated by Section 14(d)(1)

Finally, Converium's implicit suggestion that the purported size of its U.S. shareholder base[8] requires a conclusion that SCOR made a tender offer into the United States using the jurisdictional means contemplated by Section 14(d)(1) – even in the absence of a single allegation that SCOR directed any activity towards the U.S., much less that it acted "by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise" – is simply unsupported by logic or law. In this

---

[8]    Converium contends that "22% of Converium's registered shares are held by US shareholders" (Compl. ¶ 3).

regard, we note that although in each of <u>Plessey</u> and <u>Labatt</u> some percentage of the target's shares were indeed held in the U.S., <u>see</u> <u>Plessey</u>, 628 F. Supp. at 488; <u>Labatt</u>, 890 F. Supp. at 238, neither court ever so much as discussed this fact in its consideration of whether the offeror had used the jurisdictional means necessary to application of the Williams Act.

Further, even if the size of Converium's U.S. shareholder base had any relevance to the issue of whether the Williams Act applies (and it does not), the 22% figure Converium advances in its complaint would be wholly meaningless, because it speaks as of nearly eight weeks after the Offer was announced.  The SEC has established two tiers of exemptions from certain of the rules imposed by the Williams Act in the context of cross-border tender offers made into the United States, and the availability of these exemptions is dependent on the percentage of the target's securities that are held in the U.S.  17 C.F.R. § 240.13e-4(h)(8), Inst. 2 (2007).  The SEC has determined that the appropriate percentage for use in this analysis is that existing <u>prior</u> to an offer, and thus free from the distorting effects of post-announcement arbitrage and other factors.  <u>See</u> Ellen J. Odoner & Catherine Dixon, "The SEC's New Cross-Border Exemptions: Reducing the Regulatory Barriers to U.S. Participation in Foreign Takeovers," 1306 PLI/CORP. 293, 328 (2002) ("intervening arbitrage activity and other factors may dramatically alter the target's shareholdings after the initial announcement [of a tender offer], [and] the Staff now will permit the [percentage of U.S. ownership] to be calculated [for the purpose of determining which set of regulations apply] on the basis of the pre-conditional announcement date with respect to targets"); <u>see generally</u> SEC Release No. 7759, <u>supra</u>, at *21 (providing a 30-day look back from the scheduled commencement of an offer period for purposes of determining which set of regulations apply).

Certainly, if the percentage of Converium's shares held in the U.S. is relevant to the question of whether SCOR used the jurisdictional means necessary to trigger the Williams Act – and again, it is not – the only percentage that would be instructive is that existing prior to SCOR's offer (a percentage absent from Converium's complaint), not some eight weeks after. The purpose of the Williams Act is "to alleviate the pressure on shareholders to make hasty, ill-informed decisions due to the pressure-creating characteristics of traditional tender offers." Beaumont v. Am. Can Co., 621 F. Supp. 484, 500 (S.D.N.Y. 1985), aff'd, 797 F.2d 79 (2d Cir. 1986); see also Brascan Ltd. v. Edper Equities Ltd., 477 F. Supp. 773, 792 (S.D.N.Y. 1979) (the Williams Act was designed to prevent "the kind of potential pressure which, coupling a high premium with the threat that the offer will disappear as of a certain time, places an offeree under pressure to decide").  By definition, this pressure could not exist on those who did not hold Converium's shares at the time of the Offer, and we submit it would be a perversion of the Williams Act's purposes to hold that the application of the Act can be forced by decisions of U.S. persons to acquire shares after announcement of an offer that excludes them from its reach.

**B.**     **SCOR's open-market purchases of Converium stock do not constitute a use of the jurisdictional means contemplated by Section 14(d)(1)**

Although Converium does not allege in its Complaint that any of SCOR's open-market purchases of Converium stock took place in the United States or that the locality of these purchases supports application of the Williams Act, during the April 19, 2007 hearing, Converium's counsel stated that SCOR's open-market purchases "if made in the United States from U.S. purchasers as part of a buying program as a prelude to the making of this offer would constitute part of the use of the jurisdiction of the United States for Williams Act purposes." (4/19/07 Tr. at 3.)  Even a cursory reading of the Schedule 13D SCOR filed on February 21, 2007 – the very document Converium alleges is legally deficient in asserting its Section 13(d)

17

claim – reveals that all of SCOR's open-market purchases occurred on the SWX Swiss Exchange. (Sacca Decl. Ex. A, Item 5.)  Thus, the argument of Converium's counsel is not just unsupported by the allegations of the complaint, it is actually refuted by the very Schedule 13D that forms an integral part of Converium's claims.

        In all events, even if Converium had alleged that any of these purchases occurred in the United States and if those allegations were not flatly contradicted by SCOR's Schedule 13D, Converium's argument would still fail as a matter of law.  During the April 19, 2007 hearing, Converium's counsel suggested that Judge Cote's recent decision in E.ON AG v. Acciona, S.A., No. 06 Civ. 8720 (DLC), 468 F. Supp. 2d 559 (S.D.N.Y. 2007), provides support for its argument that SCOR's open-market purchases could somehow invoke application of the Williams Act.  E.ON, however, did not involve open market purchases at all, much less open market purchases preceding a tender offer.  Rather, the case addressed a foreign bidder who enlisted the aid of a U.S. investment bank to solicit sales directly from U.S. shareholders over a two-hour period in a "block trade" in lieu of an official tender offer.  E.ON, 468 F. Supp. 2d at 566-67.  Under these unique facts, Judge Cote held that the bidder in E.ON made a tender offer to U.S. shareholders without explicitly naming it as such.  Here, in sharp contrast, Converium does not – because it cannot – allege that SCOR's open-market purchases of shares totaling 8.3% of Converium's outstanding share capital constituted a tender offer within the meaning of the Williams Act.  See, e.g., Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 56-57 (2d Cir. 1985) (holding that the open market purchase of 25% of a corporation's outstanding stock did not invoke the Williams Act and discussing factors to consider in determining whether open market purchases were in fact "unconventional tender offers," including, inter alia, whether there was active solicitation of public shareholders and whether the offer to purchase was made at a

18

premium (citing <u>Wellman v. Dickinson</u>, 475 F. Supp. 783, 823-24 (S.D.N.Y. 1979), <u>aff'd on</u>

<u>other grounds</u>, 682 F.2d 355 (2d Cir. 1982)); <u>Ludlow Corp. v. Tyco Labs., Inc.</u>, No. 81-1640-Z,

1981 WL 1717, at *2 (D. Mass. July 2, 1981) (open market purchases, without more, do not

invoke the Williams Act).  And of course, Converium's complaint does not allege that SCOR, by

itself or through any intermediary, made any direct solicitation of U.S. shareholders, as was the

case in <u>E.ON</u>.

> Accordingly, Converium's claim for violation of Section 14(d) fails as a matter of

law.

## II.    CONVERIUM'S SECTION 14(e) CLAIM ALSO FAILS AS A MATTER OF LAW

> Converium also alleges SCOR violated Section 14(e) of the Exchange Act by

failing to disclose the information purportedly required under section 14(d) of the Exchange Act.

(Compl. ¶ 58.)  Thus, Converium's Section 14(e) claim is wholly derivative of its Section 14(d)

claim.  Because Converium has failed to allege any facts sufficient to demonstrate that SCOR

made a tender offer to United States shareholders using the jurisdictional mean" contemplated by

Section 14(d)(1), its Section 14(e) claim also fails as a matter of law.  <u>See</u> <u>Labatt,</u> 890 F. Supp. at

245 ("Where . . . a tender offer is totally foreign and neither solicits nor will accept tenders by

U.S. shareholders, it is not a tender offer directed to U.S. shareholders and the threshold

jurisdictional requirement of 14(e) is not met.") (citation omitted); <u>see also</u> <u>id.</u> ("[W]here

shareholders are "never presented with th[e] critical decision' of whether or not to tender, 'a vital

element of a § 14(e) claim' is missing." (quoting <u>Panter v. Marshall Field & Co.</u>, 646 F.2d 271,

283-84 (7th Cir. 1981))).[9]

---

[9]    It appears that the only case applying the federal securities laws to an entirely foreign tender offer is
<u>Consolidated Gold Fields PLC v. Minorco</u>, 871 F.2d 252 (2d Cir. 1989).  This case is readily distinguishable,
however, on two essential points.  First, <u>Gold Fields</u> involved the anti-fraud provisions of the U.S. securities

*(cont'd)*

## III.    CONVERIUM HAS NOT ADEQUATELY ALLEGED THAT SCOR VIOLATED SECTION 13(d)

Converium alleges that SCOR violated Section 13(d) of the Exchange Act by failing to disclose that "Patinex and SCOR have acted as a group" and that the "Patinex-SCOR group has a common plan or purpose, to wit, a transfer of control of Converium to SCOR, and has coordinated its trading to accomplish that goal." (Compl. ¶ 41.)[10]

### A.    Conclusory allegations that defendants are acting as a group are insufficient

Converium concedes that the Schedule 13D SCOR filed on February 21, 2007 (more than seven weeks before Converium filed its complaint) disclosed the existence of the Stock Purchase Agreement ("SPA") pursuant to which Patinex agreed to sell its Converium shares to SCOR (Compl. ¶ 23), and thus it appears Converium's claim rests on the contention that SCOR and Patinex had formed a group as defined by Section 13(d) prior to entering into the SPA and failed to disclose that purported fact in a timely manner.  Because Converium has failed to allege any facts – as opposed to mere speculation and legal conclusions – demonstrating that Patinex and SCOR acted as a group prior to entering into the SPA, this claim fails as a matter of law.

_____
*(cont'd from previous page)*

laws, not the disclosure provisions of the Williams Act.  In distinguishing Plessey – which, as here, involved only the disclosure provisions of the Williams Act – the Gold Fields court held:  "In Plessey, the target company sought to compel the bidder to make certain filings with the [SEC] under the Williams Act....  No allegations of fraud were made.  As we observed in Bersch, however, the antifraud provisions of American securities laws have broader extraterritorial reach than American filing requirements."  Gold Fields, 871 F.2d at 262 (citing Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 986 (2d Cir. 1972)).  Second, in Gold Fields, the bidder had in fact used the jurisdictional means of the Williams Act to solicit the votes of the U.S. shareholders because it "knew that the British nominees [who represented the U.S. shareholders] were required by law to forward the tender offer documents to Gold Fields' shareholders and ADR depository banks in the United States."  Id. at 262.  Converium makes no such allegation here.

[10]    In light of the facial inadequacy of Converium's Section 13(d) claim against SCOR and the discussion of that claim at the April 19, 2007 hearing, we wrote counsel for Converium to request that Converium withdraw the claim.  (See Sacca Decl. Ex. D.)  To date, we have received no response.

Courts in the Second Circuit have made clear that "'[t]he unadorned allegation that defendants are acting as a group is not adequate to sustain a Section 13(d) claim.'" Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 449 (S.D.N.Y. 2001) (citation omitted).  Accordingly, district courts have routinely dismissed Section 13(d) claims absent "specific allegations of 'interrelationships, contracts, alliances, meetings, agreements, coordinated activity, or understandings between or among any of the defendants.'" Id. at 449 (citation omitted); Roth v. Jennings, No. 03-CV-7760, 2006 U.S. Dist. LEXIS 4266, at *15 (S.D.N.Y. Feb. 1, 2006); Trans World Corp. v. Odyssey Partners, 561 F. Supp. 1315, 1323 (S.D.N.Y. 1983).

Here, although Converium alleges that the "Patinex-SCOR group" was formed "at least as early as November 2006 when SCOR began purchasing shares of Converium in open market purchases," the only factual allegation Converium offers in support of this supposition is that "Patinex likewise increased its Converium ownership from 12.5% to 19.8% between December 2005 and February 16, 2007."  (Compl. ¶ 41.)  In other words, Converium's sole basis for concluding that Patinex and SCOR acted as a group starting in November 2006 is that SCOR purchased Converium stock during a three-month period subsumed within a 17-month period in which Patinex also acquired Converium shares.  This is precisely the type of conclusory allegation that courts have found to be insufficient to state a claim under Section 13(d).

**B.    Converium has failed to allege any irreparable harm**

Further, even if Converium's allegations that SCOR failed timely to disclose the existence of a group were adequate (which they are not), Converium's Section 13(d) claim would still fail as a matter of law because it has not alleged any irreparable harm stemming from SCOR's Schedule 13D disclosure.  Converium's claim seeks only injunctive relief.  Thus, the timing of SCOR's Schedule 13D disclosure is irrelevant and all that matters is whether SCOR

21

has disclosed all of the material information Converium contends it was obligated to disclose.

Because the SCOR Schedule 13D cited in the complaint does in fact disclose the relationship

between SCOR and Patinex, Converium's claim fails for its inability adequately to allege

irreparable harm.  Indeed, courts have rejected nearly identical claims for injunctive relief and

granted motions to dismiss where – at the time of the request for an injunction – the defendant

has a Schedule 13D on file containing all of the material information relevant to shareholders,

regardless of whether the information was disclosed in prior filings.  See, e.g., Stromfeld, 496 F.

Supp. at 1088 (granting motion to dismiss claim for injunctive relief where defendants had

already filed Schedule 13D's disclosing all relevant information); E.ON AG v. Acciona, S.A., No.

06 Civ. 8720 (DLC), 2007 U.S. Dist. LEXIS 7771, at *32 (S.D.N.Y. Feb. 5, 2007) (denying

injunctive relief based on alleged deficiencies in defendant's Schedule 13D filings because "the

issue in this claim for injunctive relief is whether the information relevant to the takeover battle

which Section 13(d) requires to be disclosed, has been disclosed").  Otherwise, Section 13(d)

becomes nothing more than "a ploy to keep incumbent management safe from hostile takeover."

Independence Fed'l Savings Bank v. Bender, 332 F. Supp. 2d 203, 217 (D.D.C. 2004) (finding

no irreparable harm and denying an injunction where "[w]hatever confusion may have existed

[with regard to Schedule 13D disclosures] has certainly been clarified").

       Here, Converium concedes that on February 21, 2007 – nearly eight weeks prior

to the commencement of this action – "a Schedule 13D filed by SCOR revealed it had contracted

to acquire 19.8% of Converium's outstanding shares held by Patinex pursuant to a share purchase

agreement, as well as 4.8% of Converium's outstanding shares held by a Swedish company,

Alecta pensionsforsakring, pursuant to a separate share purchase agreement, and that, separate

and apart from these arrangements, SCOR had already acquired 8.3% of the outstanding shares

of Converium through open market purchases." (Compl. ¶ 7.) Thus, even accepting Converium's conclusory allegation that SCOR failed timely to disclose the existence of the "SCOR-Patinex group," Converium concedes that SCOR has now disclosed its relationship with Patinex through the SPA. See Treadway, 638 F.2d at 380 (finding that the "informative purpose of 13(d) had . . . been fulfilled" where shareholders had months to contemplate a potential takeover); see also Bally Total Fitness Holding Corp. v. Liberation Investments, L.P., No. Civ. A. 05-841-JJF, 2005 WL 3525679, at *2 (D. Del. Dec. 22, 2005) (finding a claim for injunctive relief moot where "Defendant's revised statement fully discloses all matters that Plaintiff indicated it would pursue at the preliminary injunction hearing.").

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety.

Dated: New York, New York
      April 30, 2007

Respectfully submitted,

/s/ Joseph N. Sacca
Jay B. Kasner (JK-7910)
Joseph N. Sacca (JS-9435)
Lea Haber Kuck (LK-5556)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendant SCOR S.A.