# EXHIBIT A: Part I

**UNITED STATES**

**SECURITIES AND EXCHANGE COMMISSION**

Washington, D.C. 20549

**SCHEDULE 13D**

Under the Securities Exchange Act of 1934

**CONVERIUM HOLDING AG**

(Name of Issuer)

**Registered Shares**

(Title of Class of Securities)

**7248256**

(Cusip Number)

**François de Varenne**

**Head of Corporate Finance and Asset Management**

**SCOR S.A.**

**1, avenue du Général de Gaulle**

**92 074 Paris – La Défense Cedex**

**France**

**Tel. No.: + 33 1 46 98 00 00**

(Name, Address and Telephone Number of

Person Authorized to Receive Notices

and Communications)

**February 16, 2007**

(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d–1(e), 240.13d–1(f) or 240.13d–1(g), check the following box:  ☐

Note: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See §240.13d–7 for other parties to whom copies are to be sent.

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

---

| | | | |
|---|---|---|---|
| 1 | NAMES OF REPORTING PERSONS<br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY)<br>SCOR S.A. | | |
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(SEE INSTRUCTIONS) | (a)<br>(b) | ☒<br>☐ |
| 3 | SEC USE ONLY | | |
| 4 | SOURCE OF FUNDS (SEE INSTRUCTIONS)<br>WC; OO | | |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e) | | ☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br>FRANCE | | |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER<br>48,320,350(1) |
|---|---|---|
| | 8 | SHARED VOTING POWER |

|   |   |   |
|---|---|---|
|   |   | 0 |
|   | 9 | SOLE DISPOSITIVE POWER |
|   |   | 48,320,350(1) |
|   | 10 | SHARED DISPOSITIVE POWER |
|   |   | 0 |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON |
|---|---|
|   | 48,320,350(1) |
| 12 | CHECK IF THE AGGREATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (SEE INSTRUCTIONS) ☐ |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) |
|   | 32.9% (1) |
| 14 | TYPE OF REPORTING PERSON (SEE INSTRUCTIONS) |
|   | IC; CO |

(1) After giving effect to the acquisition of Shares pursuant to the Share Purchase Agreements (as defined herein).

---

| 1 | NAMES OF REPORTING PERSONS |
|---|---|
|   | I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY) |
|   | SCOR Global P&C S.A. |
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP  (a) ☒ |
|   | (SEE INSTRUCTIONS)  (b) ☐ |
| 3 | SEC USE ONLY |
| 4 | SOURCE OF FUNDS (SEE INSTRUCTIONS) |
|   | OO |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e) ☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION |
|   | FRANCE |

|   |   |   |
|---|---|---|
|   | 7 | SOLE VOTING POWER |
|   |   | 0 |
|   | 8 | SHARED VOTING POWER |
|   |   | 5,400,000 |
| **NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH** | 9 | SOLE DISPOSITIVE POWER |
|   |   | 0 |
|   | 10 | SHARED DISPOSITIVE POWER |
|   |   | 5,400,000 |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON |
|---|---|
|   | 5,400,000 |
| 12 | CHECK IF THE AGGREATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (SEE INSTRUCTIONS) ☐ |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) |
|   | 3.7% |
| 14 | TYPE OF REPORTING PERSON (SEE INSTRUCTIONS) |
|   | CO |

---

| 1 | NAMES OF REPORTING PERSONS |
|---|---|
|   | I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY) |
|   | IRP Holdings Limited |

| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | (a) ☒ |
| | (SEE INSTRUCTIONS) | (b) ☐ |
| 3 | SEC USE ONLY | |
| 4 | SOURCE OF FUNDS (SEE INSTRUCTIONS) | |
| | OO | |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e) | ☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION | |
| | REPUBLIC OF IRELAND | |

| | | | |
|---|---|---|---|
| **NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH** | 7 | SOLE VOTING POWER | |
| | | 0 | |
| | 8 | SHARED VOTING POWER | |
| | | 6,800,000 | |
| | 9 | SOLE DISPOSITIVE POWER | |
| | | 0 | |
| | 10 | SHARED DISPOSITIVE POWER | |
| | | 6,800,000 | |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON | |
| | 6,800,000 | |
| 12 | CHECK IF THE AGGREATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (SEE INSTRUCTIONS) | ☐ |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) | |
| | 4.6% | |
| 14 | TYPE OF REPORTING PERSON (SEE INSTRUCTIONS) | |
| | CO | |

---

**Item 1. Security and Issuer**

The class of equity securities to which this statement relates is the registered shares, par value CHF 5 per share ("Shares"), of Converium Holding AG, a corporation organized under the laws of Switzerland (the "Issuer"). The principal executive offices of the Issuer are located at Dammstrasse 19, CH−6301, Zug, Switzerland.

**Item 2. Identity and Background**

This statement is filed by:

(i) SCOR S.A., a *société anonyme* organized under the laws of France ("SCOR"). The address of the principal office of SCOR is 1, avenue du Général de Gaulle, 92 800 Puteaux, France. SCOR's principal business is to provide (directly or through its consolidated subsidiaries) Life and Non−Life reinsurance services, as well as direct insurance services;

(ii) SCOR Global P&C S.A., a *société anonyme* organized under the laws of France and a wholly−owned subsidiary of SCOR ("SCOR Global P&C"). The address of the principal office of SCOR Global P&C is 1, avenue du Général de Gaulle, 92 800 Puteaux, France. The principal business of SCOR Global P&C is to provide (directly or through entities of the SCOR group) Non−Life reinsurance services, as well as direct insurance services; and

(iii) IRP Holdings Limited, a single member private company limited by shares organized under the laws of the Republic of Ireland and a wholly−owned subsidiary of SCOR ("IRP" and, together with SCOR and SCOR Global P&C, the "Reporting Persons"). The address of the principal office of IRP is 4th Floor, 25 − 28 Adelaide Road, Dublin 2, Ireland. The principal business of IRP is to acquire and hold, in its own name or in the name of any nominee, securities or interest in companies or other entities.

See Annex A attached hereto, which sets forth the name, business address, title and present principal occupation or employement of each of the directors and executive officers of each Reporting Person.

During the last five years and except with respect to Jean−Claude Seys[1], none of the Reporting Persons, or, to the best of the Reporting Persons' knowledge, any other person controlling any of the Reporting Persons or any of the persons listed in Annex A hereto:

(a) has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors); or

(b) was a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

**Item 3. Source and Amount of Funds or Other Consideration**

---

[1] In connection with the Crédit Lyonnais / Executive Life matter, Jean−Claude Seys entered into a settlement with the California prosecutor's office pursuant to which he is subject to five years of probation. During such time he cannot travel to the United States without special authorization.

The Reporting Persons purchased 12,200,000 Shares in open–market transactions on the SWX Swiss Exchange and by exercising options, for an aggregate of approximately CHF 231,381,672 (or $187,443,037.49 based on an exchange rate as of February 19, 2007 of CHF 1 = $0.810060). The source of funds for these purchases was the Reporting Persons' internal funds.

SCOR will purchase Shares pursuant to the Share Purchase Agreements (as defined herein) using SCOR's internal funds and SCOR Shares (as defined herein).

**Item 4. Purpose of Transaction**

The Reporting Persons have acquired Shares and will acquire Shares pursuant to the Share Purchase Agreements as reported in this statement. SCOR has approached the Issuer's Board of Directors and its management to discuss the compelling proposal to combine the Issuer and SCOR and to solicit the Issuer's Board of Directors recommendation for a full offer for the Issuer. SCOR strongly believes that the combination of the Issuer and SCOR represents a unique strategic opportunity to create a Top 5 global multi–line reinsurer in this time of market consolidation. This combination is based on very strong industrial, economic and financial rationales. SCOR is fully convinced that the combination of the Issuer and SCOR is in the best interest of both companies, their shareholders and stakeholders.

The Reporting Persons will continue to evaluate their ownership and voting position in the Issuer and intend to play an active role in asserting their rights as shareholders of the Issuer. The Reporting Persons may consider the following future courses of action, among others:

- The acquisition of additional Shares in the open market, block trades, negotiated transactions, through options, swaps or otherwise;
- The making of a tender offer to acquire the Issuer's outstanding Shares not held by the Reporting Persons;
- Modifications of the composition of the present board of directors of the Issuer;
- An extraordinary corporate transaction, such as a merger, consolidation or reorganization of the Issuer or any of its subsidiaries; and
- Changes in the Issuer's charter, bylaws or instruments corresponding thereto.

The Reporting Persons have not yet determined which, if any, of the above courses of action they may ultimately take. The Reporting Persons' future actions with regard to this investment are dependent on their evaluation of a variety of circumstances affecting the Issuer in the future, including prospects of the Issuer, general market and economic conditions and other factors deemed relevant. The Reporting Persons reserve the right to determine in the future whether to change the purpose or purposes described above or whether to adopt plans or proposals of the type specified above.

**Item 5. Interest in Securities of the Issuer**

(a)–(b) The number of Shares beneficially owned as of the date hereof by SCOR is 48,320,350[*]. In the aggregate, these Shares constitute, based on the number of Shares outstanding on January 31, 2007, as represented by the Issuer in the Form 6–K filed with the SEC on February 2, 2007, 32.9%[*] of the Issuer's outstanding share capital.

Number of Shares as to which SCOR has:

- sole power to vote or to direct the vote: 48,320,350[*]

---

- shared power to vote or to direct the vote: 0
- sole power to dispose or to direct the disposition of: 48,320,350[*]
- shared power to dispose or to direct the disposition of: 0

Number of shares as to which SCOR Global P&C has:

- sole power to vote or to direct the vote: 0
- shared power to vote or to direct the vote: 5,400,000
- sole power to dispose or to direct the disposition of: 0
- shared power to dispose or to direct the disposition of: 5,400,000

SCOR Global P&C shares voting and dispositive authority over all the Shares it beneficially owns with SCOR.

Number of shares as to which IRP has:

- sole power to vote or to direct the vote: 0
- shared power to vote or to direct the vote: 6,800,000
- sole power to dispose or to direct the disposition of: 0
- shared power to dispose or to direct the disposition of: 6,800,000

---

[*] After giving effect to the acquisition of Shares pursuant to the Share Purchase Agreements.

IRP shares voting and dispositive authority over all the Shares it beneficially owns with SCOR.

(c) The following transactions in Shares have been effected by the Reporting Persons during the sixty days prior to the date hereof:

| Transaction | Date | Reporting Person | Number of Shares Acquired | Price per Share (CHF) |
|---|---|---|---|---|
| Acquisition of Shares in open market on SWX Swiss Exchange | November 14, 2006 | SCOR Global P&C | 310,000 | 16.36 ($13.25)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | November 21, 2006 | SCOR Global P&C | 190,000 | 16.31 ($13.21)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 9, 2007 | IRP | 1,000,000 | 18.40 ($14.90)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 17, 2007 | IRP | 390,000 | 18.11 ($14.67)** |

| Transaction | Date | Reporting Person | Number of Shares Acquired | Price per Share (CHF) |
|---|---|---|---|---|
| Acquisition of Shares in open market on SWX Swiss Exchange | January 18, 2007 | IRP | 1,120,000 | 18.38 ($14.89)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 19, 2007 | IRP | 700,000 | 18.46 ($14.95)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 22, 2007 | IRP | 260,000 | 18.51 ($15.00)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 23, 2007 | IRP | 659,232 | 18.56 ($15.04)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 24, 2007 | IRP | 1,870,768 | 18.56 ($15.04)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 26, 2007 | IRP | 112,380 | 18.19 ($14.73)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 29, 2007 | IRP | 346,000 | 18.07 ($14.64)** |
| Acquisition of Shares in open market on SWX Swiss Exchange | January 30, 2007 | IRP | 341,620 | 18.06 ($14.63)** |
| Exercise of options to acquire Shares* | February 19, 2007 | SCOR Global P&C | 4,900,000 | 20.00*** ($16.20)** |

* Options to acquire Shares entered into on February 16, 2007.

** Based on an exchange rate as of February 19, 2007 of CHF 1 = $0.81006.

*** Includes CHF 1.2 per Share for the options purchase price.

Other than as set forth in this Item 5, to the best of each Reporting Person's knowledge as of the date hereof (1) none of the Reporting Persons nor any subsidiary or affiliate of any of the Reporting Persons nor any of the Reporting Persons' directors or executive officers, beneficially owns any Shares or options to acquire Shares and (2) there have been no transactions in the Shares effected during the past 60 days by any of the Reporting Persons, nor to the best of each Reporting Person's knowledge, by any subsidiary or affiliate of any of the Reporting Persons or any of the Reporting Persons' directors or executive officers listed in Annex A hereto.

(d) No person is known by any of the Reporting Persons to have the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, Shares.

(e) Not applicable.

**Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer**

SCOR will acquire 29,020,350 Shares, or approximately 19.8% of the Issuer's issued share capital, pursuant to the terms and subject to the conditions set forth in the Share Purchase Agreement entered into between SCOR and Patinex AG ("Patinex") on February 16, 2007 (the "Patinex Share Purchase Agreement"). Pursuant to the terms of the Patinex Share Purchase Agreement, SCOR will acquire from Patinex 29,020,350 Shares for an aggregate consideration of CHF 121,885,470 (representing 20% of the consideration for the Shares) and 14,331,037 newly issued ordinary shares,

with a par value of €7.8769723 each, of SCOR ("SCOR Shares") (representing 80% of the consideration for the Shares). The consideration per Share to be acquired by SCOR pursuant to the Patinex Share Purchase Agreement collectively represents a purchase price of CHF 21.1 per Share based on the closing price per SCOR Share on Friday, February 16, 2007. Subject to the receipt of the relevant insurance and antitrust regulators' approvals, the acquisition of Shares pursuant to the Patinex Share Purchase Agreement is

expected to be completed by the beginning of April 2007.

A copy of the Patinex Share Purchase Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference.

SCOR will acquire 7,100,000 Shares, or approximately 4.8% of the Issuer's issued share capital, pursuant to the terms and subject to the conditions set forth in the Share Purchase Agreement entered into between SCOR and Alecta pensionsförsäkring, ömsesidigt ("Alecta") on February 18, 2007 (the "Alecta Share Purchase Agreement" and, together with the Patinex Share Purchase Agreement, the "Share Purchase Agreements"). Pursuant to the terms of the Alecta Share Purchase Agreement, SCOR will acquire from Alecta 7,100,000 Shares for an aggregate consideration of CHF 29,820,000 (representing 20% of the consideration for the Shares) and 3,506,173 newly issued SCOR Shares (representing 80% of the consideration for the Shares). The consideration per Share to be acquired by SCOR pursuant to the Alecta Share Purchase Agreement collectively represents a purchase price of CHF 21.1 per Share based on the closing price per SCOR Share on Friday, February 16, 2007. Subject to the receipt of the relevant insurance and antitrust regulators' approvals, the acquisition of Shares pursuant to the Alecta Share Purchase Agreement is expected to be completed by the beginning of April 2007.

A copy of the Alecta Share Purchase Agreement is attached hereto as Exhibit 2 and is incorporated herein by reference.

Following the consummation of the acquisition of the Shares under the Share Purchase Agreements, the Reporting Persons will hold in the aggregate approximately 32.9% of the Issuer's issued share capital.

To the best of each Reporting Person's knowledge, except as described in this Schedule 13D, there are at present no contracts, arrangements, understandings or relationships (legal or otherwise) among the persons named in Item 2 above and between any such persons and any person with respect to any securities of Issuer.

**Item 7. Material to be Filed as Exhibits**

The following are filed as exhibits to this statement:

Exhibit 1: Share Purchase Agreement dated as of February 16, 2007 by and between SCOR S.A. and Patinex AG

Exhibit 2: Share Purchase Agreement dated as of February 18, 2007 by and between SCOR S.A. and Alecta pensionsförsäkring, ömsesidigt

---

### SIGNATURES

After reasonable inquiry and to the best knowledge and belief of each of the undersigned, each of the undersigned certifies that the information set forth in this statement is true, complete and correct.
Date: February 20, 2007

SCOR S.A.

By:  /s/ Denis Kessler
_____

Name: Denis Kessler

Title: Chairman and Chief Executive Officer

SCOR Global P&C S.A.

By:  /s/ Denis Kessler
_____

Name: Denis Kessler

Title: Chairman and Chief Executive Officer

IRP Holdings Limited

By:  /s/ Patrick Thourot
_____

Name: Patrick Thourot

Title: Chairman

Annex A

## DIRECTORS AND EXECUTIVE OFFICERS

**SCOR S.A.**

The name, business address, title and present principal occupation or employment of each of the directors and executive officers of SCOR S.A. are set forth below. If no business address is given, the director's or executive officer's business address is SCOR S.A.'s address at 1, avenue du Général de Gaulle, 92 800 Puteaux, France. Unless otherwise indicated, each occupation set forth opposite an individual's name refers to SCOR S.A.

| Name and Citizenship | Present Principal Occupation or Employment and Business Address |
|---|---|
| *Directors* | |
| Denis Kessler<br>French | Chairman of the Board of Directors and Chief Executive Officer |
| Carlo Acutis<br>Italian | Vice–Chairman of Vittoria Assicurazioni S.p.A.<br>Vittoria Assicurazioni S.p.A., Via Don Minzioni, 14, I– 10121 Torino, Italia |
| Antonio Borgès<br>Portuguese | Vice–Chairman of Goldman Sachs International, London<br>Goldman Sachs International, London, Peterborough Court, 133 Fleet Street, London, EC4A 2BB United Kingdom |
| Allan Chapin, Esq.<br>American | Partner of Compass Advisers LLP<br>Compass Advisers LLP, 825 Third Avenue, New York, NY 10 022, United States of America |
| Daniel Havis<br>French | Chairman and Chief Executive Officer of MATMUT<br>MATMUT, 66, rue de Sotteville, 76 100 Rouen, France |
| Daniel Lebègue<br>French | Chairman of the Institut Français des Administrateurs (French Institute of Directors)<br>Institut Français des Administrateurs, 27 avenue de Friedland, 75 382 Paris Cedex 08, France |

| Name and Citizenship | Present Principal Occupation or Employment and Business Address |
|---|---|
| Helman le Pas de Sécheval<br>French | Group Chief Financial Officer of Groupama S.A.<br>Groupama S.A., Direction Financière Groupe, 8–10 rue d'Astorg, 75 783 Paris Cedex 08, France |
| André Lévy–Lang<br>French | Associate Professor (Emeritus) at the Paris University of Dauphine |
| Herbert Schimetschek<br>Austrian | Chairman of the Management Board of Austria Versicherungsverein auf Gegenseitigkeit Privatstiftung (Holding)<br>UNIQA International, Untere Donaustrasse 25, A–1020 Wien, Austria |
| Jean–Clause Seys<br>French | Chairman and Chief Executive Officer of COVEA (SGAM)<br>MAAF Assurances, MMA & COVEA, 7, place des Martyrs du Lycée Buffon, 75 015 Paris, France |
| Jean Simonnet<br>French | Chairman of SMIP<br>MACIF, 2–4, rue de Pied de Fond, 79 000 Niort, France |
| Claude Tendil<br>French | Chairman and Chief Executive Officer of Generali France, Generali Vie, Generali IARD and Europ Assistance<br>Generali France Holding, 7/9, boulevard Haussmann, 75 009 Paris, France |
| Daniel Valot<br>French | Chairman and Chief Executive Officer of Technip<br>Technip, Tour Technip, 6–8, allée de l'Arche, 92 973 Paris La Défense Cedex, France |

Georges Chodron de Courcel (non–voting director)
French

Chief Operating Officer of BNP Paribas
BNP Paribas, 3, rue d'Antin, 75 002 Paris, France

---

| Name and Citizenship | Present Principal Occupation or Employment and Business Address |
|---|---|

*Executive officers*
*(Who are not directors)*

Patrick Thourot
French

Chief Operating Officer

**SCOR Global P&C S.A.**

The name, business address, title and present principal occupation or employment of each of the directors and executive officers of SCOR Global P&C S.A. are set forth below. If no business address is given, the director's or executive officer's business address is SCOR's address at 1, avenue du Général de Gaulle, 92 800 Puteaux, France. Unless otherwise indicated, each occupation set forth opposite an individual's name refers to SCOR Global P&C S.A.

| Name and Citizenship | Present Principal Occupation or Employment and Business Address |
|---|---|

*Directors*

Denis Kessler (Chairman of the Board and Chief Executive Officer)
French

Chairman of the Board of Directors and Chief Executive Officer of SCOR S.A.

Victor Peignet
French

Chief Operating Officer of SCOR Global P&C S.A.

Patrick Thourot
French

Chief Operating Officer of SCOR S.A.

Jean–Luc Besson
French

Chief Risk Officer of the SCOR group

Marcel Kahn
French

Chief Financial Officer of the SCOR group

---

**IRP Holdings Limited**

The name, business address, title and present principal occupation or employment of each of the directors and executive officers of IRP Holdings Limited are set forth below. If no business address is given, the director's or executive officer's business address is IRP Holdings Limited's address at 4th Floor, 25 – 28 Adelaide Road, Dublin 2, Ireland. Unless otherwise indicated, each occupation set forth opposite an individual's name refers to IRP Holdings Limited.

| Name and Citizenship | Present Principal Occupation or Employment and Business Address |
|---|---|

*Directors*

Patrick Thourot (Chairman)
French

Chief Operating Officer of SCOR S.A.
SCOR S.A., 1, avenue du Général de Gaulle, 92 800 Puteaux, France

| Gordon Holmes<br>Irish | Solicitor<br>Holmes O'Malley Sexton Solicitors – Henry Street Limerick PO<br>Box 146 Ireland |
| Emmanuelle Rousseau<br>French | General Counsel of SCOR S.A.<br>SCOR S.A., 1, avenue du Général de Gaulle, 92 800 Puteaux,<br>France |

| **Name and Citizenship** | **Present Principal Occupation or Employment and Business Address** |
| --- | --- |
| *Executive officers*<br>*(Who are not directors)* | |
| Not applicable | Not applicable |



# CONVERIUM HOLDING AG (CHR)

BAARERSTRASSE 8
ZUG
SWITZERLAND 6300, V8 00000
411. 639.9999
http://www.converium.com

# EX-99

**EXHIBIT 1 – SHARE PURCHASE AGMT – PATINEX**
SC 13D Filed on 02/21/2007
File Number 005–51262



LIVEDGAR  Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

Exhibit 1

# SHARE PURCHASE AGREEMENT
## BY AND BETWEEN
### SCOR S.A.
### AND
### PATINEX AG
## DATED AS OF FEBRUARY 16, 2007

---

## TABLE OF CONTENTS

### ARTICLE I
### DEFINITIONS

| | | |
|---|---|---|
| 1.1 | Certain Defined Terms. | 1 |
| 1.2 | Construction. | 5 |

### ARTICLE II
### SALE AND PURCHASE OF COMPANY EQUITY SECURITIES; CLOSING PROCEDURE

| | | |
|---|---|---|
| 2.1 | Sale and Purchase of Owned Shares and Purchase Rights Shares. | 6 |
| 2.2 | Cash Closing. | 6 |
| 2.3 | Share Closing. | 7 |

### ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF THE SELLER

| | | |
|---|---|---|
| 3.1 | Authorization. | 8 |
| 3.2 | Binding Agreement. | 9 |
| 3.3 | Organization. | 9 |
| 3.4 | Consents and Approvals; No Violations. | 9 |
| 3.5 | Ownership of Company Equity Securities. | 9 |
| 3.6 | Compliance with Applicable Laws. | 10 |
| 3.7 | Information. | 10 |
| 3.8 | Litigation. | 10 |
| 3.9 | Full Disclosure. | 10 |

### ARTICLE IV
### REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

| | | |
|---|---|---|
| 4.1 | Authorization. | 11 |
| 4.2 | Binding Agreement. | 11 |
| 4.3 | Organization. | 11 |
| 4.4 | Consents and Approvals; No Violations. | 11 |
| 4.5 | Share Consideration. | 12 |
| 4.6 | Full Disclosure. | 12 |

### ARTICLE V
### CERTAIN COVENANTS

| | | |
|---|---|---|
| 5.1 | Public Statements. | 12 |
| 5.2 | Further Assurances. | 13 |
| 5.3 | Governmental Approvals. | 13 |
| 5.4 | Compliance with Applicable Laws. | 13 |
| 5.5 | No Transfer of the Company Equity Securities. | 14 |
| 5.6 | Share Consideration Price Adjustment. | 14 |
| 5.7 | Aggregate Consideration Adjustment. | 14 |
| 5.8 | Execution of Contribution Agreement. | 15 |
| 5.9 | Confidentiality. | 15 |

i

**ARTICLE VI**
**CONDITIONS TO CLOSING**

| | | |
|---|---|---|
| 6.1 | Conditions to the Purchaser's Obligations. | 15 |
| 6.2 | Conditions to the Seller's Obligations. | 16 |
| 6.3 | Conditions to the Parties' Obligations. | 16 |

**ARTICLE VII**
**TERMINATION**

| | | |
|---|---|---|
| 7.1 | Termination. | 17 |
| 7.2 | Effect of Termination. | 17 |

**ARTICLE VIII**
**INDEMNIFICATION**

| | | |
|---|---|---|
| 8.1 | Survival Periods. | 17 |
| 8.2 | Indemnification by Seller. | 18 |
| 8.3 | Indemnification by Purchaser. | 18 |
| 8.4 | Limitation of Liability. | 18 |

**ARTICLE IX**
**MISCELLANEOUS**

| | | |
|---|---|---|
| 9.1 | Fees and Expenses; Taxes. | 19 |
| 9.2 | Consent to References. | 19 |
| 9.3 | Notices. | 19 |
| 9.4 | Entire Agreement; No Third Party Beneficiaries. | 20 |
| 9.5 | Specific Performance. | 20 |
| 9.6 | Waivers and Amendments; Non–Contractual Remedies. | 20 |
| 9.7 | Binding Effect; Assignment. | 21 |
| 9.8 | Severability. | 21 |
| 9.9 | Governing Law. | 21 |
| 9.10 | Arbitration. | 21 |

ii

This SHARE PURCHASE AGREEMENT (this "**Agreement**") is entered into as of February 16, 2007, by and between SCOR S.A., a *société anonyme* organized and existing under the laws of the French Republic (the "**Purchaser**") and Patinex AG, an *Aktiengesellschaft* organized and existing under the laws of Switzerland (the "**Seller**"). The Purchaser and the Seller are each sometimes referred to individually as a "**Party**" and collectively as the "**Parties**".

## RECITALS

**WHEREAS**, as of the date hereof, the Seller is the legal and beneficial owner of (i) 14,185,350 Company Shares (as defined in Section 1.1 below) of Converium Holding AG (the "**Company**"), an *Aktiengesellschaft* organized and existing under the laws of Switzerland (the "**Owned Shares**"), and (ii) warrants traded on the SWX (as defined in Section 1.1 below) with entitlements to purchase 14,835,000 Company Shares (the "**Purchase Rights**" and, together with the Owned Shares and, as and when applicable, the Purchase Rights Shares (as defined in Section 1.1 below), the "**Company Equity Securities**"); and

**WHEREAS**, the Seller wishes to sell the Owned Shares and the Purchase Rights Shares to the Purchaser and the Purchaser desires to purchase the Owned Shares and the Purchase Rights Shares from the Seller, on the terms and subject to the conditions set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, intending to be legally bound hereby, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS

1.1      *Certain Defined Terms*. Unless otherwise expressly provided in this Agreement, capitalized terms used in this Agreement shall have the following meanings:

"**Affiliate**" shall mean, with respect to any Person, any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such first Person. For the avoidance of doubt, BZ Bank Aktiengesellschaft shall not be deemed an Affiliate of the Seller for purposes hereof.

"**Aggregate Cash Amount**" shall have the meaning set forth in Section 2.1 hereof.

"**Aggregate Consideration**" shall have the meaning set forth in Section 2.1 hereof.

"**Agreement**" shall have the meaning set forth in the first paragraph of this Agreement.

"**AMF General Regulation**" shall mean the General Regulation (*Réglement général*) of the French *Autorité des marchés financiers*.

1

---

"**Applicable Law**" shall mean, with respect to any Person or any property or asset, all laws, statutes, ordinances, codes, rules, regulations or Orders applicable to or binding on such Person (or its properties or assets) or to such property or asset from time to time.

"**Beneficial Owner**" shall have the meaning set forth in Section 3.5 hereof.

"**Business Day**" shall mean any day other than a Saturday, Sunday or a day on which the Purchaser is closed for business or banking institutions located in Zurich, Switzerland or Paris, France are authorized or obligated by law or executive order to be closed. For all purposes hereof, any action required to be performed on any day which is not a Business Day, or any period for giving notice or taking any action or otherwise which ends on a day which is not a Business Day, shall be deemed to be a day which is the next Business Day.

"**Cash Amount**" shall have the meaning set forth in Section 2.3(d) hereof.

"**Cash Closing**" shall have the meaning set forth in Section 2.2(a) hereof.

"**Cash Closing Date**" shall have the meaning set forth in Section 2.2(a) hereof.

"**Cash Payment Option**" shall have the meaning set forth in Section 2.3(d) hereof.

"**Cash Payment Option Closing**" shall have the meaning set forth in Section 2.3(d) hereof.

"**Cash Payment Option Closing Date**" shall have the meaning set forth in Section 2.3(d) hereof.

"**Cash Shares**" shall have the meaning set forth in Section 2.1 hereof.

"**Company**" shall have the meaning set forth in the Recitals to this Agreement.

"**Company Equity Securities**" shall have the meaning set forth in the Recitals to this Agreement.

"**Company Share**" shall mean any registered share, nominal value CHF 5 per share, of the Company.

"**Confidentiality Agreement**" shall mean the confidentiality agreement dated January 24, 2007 between the Seller and the Purchaser.

"**Damages**" shall have the meaning set forth in Section 8.2 hereof.

"**Dispute**" shall have the meaning set forth in Section 9.10(a) hereof.

2

---

"**Effectively Exchanged Shares**" shall have the meaning set forth in Section 2.3(d) hereof.

"**Encumbrances**" shall have the meaning set forth in Section 3.5 hereof.

"**Exchange Act**" shall mean the Securities Exchange Act of 1934, as amended.

"**Exchanged Shares**" shall have the meaning set forth in Section 2.1 hereof.

"**Governmental Authority**" shall mean any supranational, national, state, municipal, local or foreign government, any instrumentality, subdivision, court, arbitral body, administrative agency, commission or other instrumentality or any quasi–governmental or private body exercising any regulatory, taxing, importing or other governmental or quasi–governmental functions, including any such entity charged with supervision of insurance or reinsurance companies.

"**Interest**" shall mean an interest of EURIBOR 3 months applied to the Cash Amount during the period starting as of the Cash Closing Date and ending on the Cash Payment Option Closing Date, as applicable on an actual/actual basis (*provided, however*, that in the event of partial exercise of the Cash Payment Option by the Purchaser prior to the Share Closing Date, the interest rate of EURIBOR 3 months shall be applied to the amount resulting from multiplying the exact number of Exchanged Shares effectively acquired by the Purchaser pursuant to the partial exercise of the Cash Payment Option by CHF 21 (twenty one Swiss Francs) during the period from the Cash Payment Option Closing Date until the Share Closing Date).

"**ISA**" shall mean the Swiss Federal Act on The Supervision of Insurance Companies dated December 17, 2004.

"**Mandatory Approvals and Notifications**" shall mean any and all approvals and notifications set forth in Schedules 3.4 and 4.4 hereto.

"**Order**" shall mean any judgment, injunction, order, award, ruling, writ, decree or other restriction of any court or arbitrator or Governmental Authority having competent jurisdiction.

"**Owned Shares**" shall have the meaning set forth in the Recitals to this Agreement.

"**Party**" shall have the meaning set forth in the first paragraph of this Agreement.

"**Person**" shall mean any individual, trust, estate, corporation, limited liability company, partnership or any other incorporated or unincorporated entity, or Governmental Authority.

"**Purchaser**" shall have the meaning set forth in the Preamble of this Agreement.

3

---

"**Purchaser Indemnified Parties**" shall have the meaning set forth in Section 8.2 hereof.

"**Purchaser's Certificate**" shall mean a certificate to be executed by a duly authorized representative of the Purchaser and to be delivered to the Seller as of the Cash Closing, the Share Closing and/ort the Cash Payment Option Closing, as applicable, certifying to the Seller that the conditions set forth in Sections 6.2(a) and 6.2(b) hereof have been complied with in all respects by the Purchaser as of the relevant date.

"**Purchase Rights**" shall have the meaning set forth in the Recitals to this Agreement.

"**Purchase Rights Shares**" shall mean all or part, depending as applicable on the effective date of exercise of the Purchase Rights by the Seller, of the 14,835,000 Company Shares to be legally and beneficially owned by the Seller as a result of its exercise of the Purchase Rights pursuant to the terms of this Agreement.

"**Purchaser Shares**" shall have the meaning set forth in Section 2.1 hereof.

"**Purchaser's AGM**" shall have the meaning set forth in Section 2.3(a) hereof.

"**Registration Date**" shall mean the twenty fifth (25th) Business Day after the date of execution of this Agreement.

"**Representatives**" shall have the meaning set forth in Section 8.2 hereof.

"**Restricted Information**" shall mean information regarding the Company and/or its Affiliates the disclosure of which would violate Applicable Law or third party rights or make the Purchaser an insider or tippee pursuant to applicable insider trading laws and regulations, with the effect that the Purchaser would not be entitled to enter or consummate this Agreement, as long as such information is non-public.

"**Rules**" shall have the meaning set forth in Section 9.10(a) hereof.

"**Seller**" shall have the meaning set forth in the Preamble of this Agreement.

"**Seller Indemnified Parties**" shall have the meaning set forth in Section 8.3 hereof.

"**Seller's Bank Account**" shall have the meaning set forth in Section 2.2(c) hereof.

"**Seller's Certificate**" shall mean a certificate to be executed by a duly authorized representative of the Seller and to be delivered to the Purchaser as of the Cash Closing, the Share Closing and/or the Cash Option Payment Closing, as applicable, certifying to the Purchaser that the conditions set forth in Sections 6.1(a)

4

and 6.1(b) hereof have been complied with in all respects by the Seller as of the relevant date.

"**SESTA**" shall mean the Swiss Federal Act on Stock Exchanges and Securities Trading of March 24, 1995, as amended.

"**SESTO FBC**" shall mean the Ordinance of the Federal Banking Commission on Stock Exchanges and Securities Trading of June 25, 1997, as amended.

"**Share Closing**" shall have the meaning set forth in Section 2.3(a) hereof.

"**Share Closing Date**" shall have the meaning set forth in Section 2.3(a) hereof.

"**SWX**" shall mean the SWX Swiss Exchange.

"**Taxes**" shall mean all Swiss or foreign taxes, including income, corporate income, gross receipts, windfall profits, value added, severance, property, production, sales, use, license, franchise, employment, withholding, excise, transfer (including real property transfer or gains), stamp, documentary, filing and recordation taxes or similar taxes, together with any interest, additions or penalties with respect thereto and any interest in respect of such additions or penalties.

"**Transfer**" shall mean, with respect to a security, whether directly or indirectly (i) to sell, pledge, encumber, grant an option with respect to, transfer or otherwise dispose of such security or any interest therein (including any voting interest), or (ii) to enter into an agreement or commitment providing for the sale of, pledge of, encumbrance of, grant of an option with respect to, transfer of or disposition of such security or any interest therein.

    1.2    Construction. For the purposes of this Agreement: (i) words (including capitalized terms defined herein) in the singular shall be held to include the plural and *vice versa* as the context requires; (ii) the terms "hereof," "herein," and "herewith" and words of similar import shall, unless otherwise expressly stated, be construed to refer to this Agreement as a whole (including any Exhibit or Schedule hereto) and not to any particular provision of this Agreement, and Article, Section, Exhibit and Schedule references are to the Articles, Sections, Exhibits and Schedules of or to this Agreement unless otherwise expressly specified; (iii) the word "including" and words of similar import when used in this Agreement shall mean "including without limitation" unless otherwise expressly specified; (iv) the word "or" shall not be exclusive; and (v) all references to any period of days shall be deemed to be to the relevant number of calendar days unless otherwise expressly specified.

**ARTICLE II**
**SALE AND PURCHASE OF COMPANY EQUITY SECURITIES;**
**CLOSING PROCEDURE**

    2.1    Sale and Purchase of Owned Shares and Purchase Rights Shares. Subject to the terms and the conditions of this Agreement and on the basis of

5

the representations and warranties of each of the Parties contained herein, the Seller shall sell, convey and transfer, and the Purchaser shall purchase, free and clear of all Encumbrances, in accordance with Sections 2.2 and 2.3 below, (i) all of the Owned Shares legally and beneficially owned by the Seller and (ii) all of the Purchase Rights Shares legally and beneficially owned by the Seller, for an aggregate consideration of CHF 121,885,470 (one hundred twenty one million eight hundred eighty five thousand four hundred seventy Swiss Francs) (the "**Aggregate Cash Amount**") and 14,331,037 newly issued ordinary shares, with a par value of EUR 7.8769723 each, of the Purchaser (the "**Purchaser Shares**" and, together with the Aggregate Cash Amount, the "**Aggregate Consideration**"), *i.e.* a consideration of CHF 4,20 (four Swiss Francs and twenty cents) and 0.4938272 Purchaser Share per Company Share. The Aggregate Consideration shall be allocated as follows: (a) the Aggregate Cash Amount for 5,804,070 Company Shares corresponding to 3.96% of the Company's issued share capital (the "**Cash Shares**") and (b) 14,331,037 Purchaser Shares (the "**Share Consideration**") for 23,216,280 Company Shares corresponding to 15.83% of the Company's issued share capital (the "**Exchanged Shares**").

    2.2    Cash Closing.

    (a)    The consummation of the sale and purchase of the Cash Shares pursuant to the terms of this Agreement (the "**Cash Closing**") shall take place at (i) the Zurich offices of Homburger, as soon as reasonably practicable but no later than five (5) Business Days following the satisfaction or waiver of all conditions set forth in Article VI below (other than those conditions that by their nature are to be satisfied as of the Cash Closing Date, but subject to the fulfilment or waiver of those conditions as of the Cash Closing Date) in accordance with this Agreement or (ii) at such other time and place as the Parties may mutually agree in writing. The date on which the Cash Closing occurs is called the "**Cash Closing Date**".

(b)     At the Cash Closing, the Seller shall deliver, or cause to be delivered, to the Purchaser (i) a valid assignment of the Cash Shares in writing with written notice to the Company to that effect (*provided, however*, that the time of delivery of such notice to the Company shall have to be agreed by the Purchaser) and evidence of a book transfer of the Cash Shares to the Purchaser through SIS (*Lieferung gegen Zahlung*) and (ii) a Seller's Certificate dated as of the Cash Closing Date, and shall do all such other acts as may be required under Applicable Law and the articles of incorporation of the Company to transfer the Cash Shares and all rights connected therewith to the Purchaser.

(c)     At the Cash Closing, the Purchaser shall (i) pay to the Seller an amount equal to the Aggregate Cash Amount in cash by wire transfer in immediately available funds to a bank account designated by the Seller and notified to the Purchaser at least three (3) Business Days prior to the Cash Closing (the "**Seller's Bank Account**") and (ii) deliver the Purchaser's Certificate dated as of the Cash Closing Date to the Seller.

2.3     Share Closing.

(a)     The consummation of the sale and purchase of the Exchanged Shares pursuant to the terms of this Agreement (the "**Share Closing**") may, in each case subject to the satisfaction or waiver of all conditions set forth in

6

---

Article VI below as of the Share Closing Date, take place, at the Purchaser's sole discretion (*provided, however*, that the Purchaser shall be obligated to provide, at least five (5) Business Days in advance of the Share Closing Date, a written notice to the Seller setting forth the contemplated Share Closing Date), at the Zurich offices of Homburger either (i) on the Cash Closing Date or (ii) at any time during the period starting as of the Cash Closing Date and ending on the fifth (5th) Business Day after the date of the Purchaser's annual general shareholders' meeting approving its financial statements for the fiscal year 2006 (the "**Purchaser's AGM**"). The date on which the Share Closing occurs is called the "**Share Closing Date**".

(b)     At the Share Closing, the Seller shall deliver, or cause to be delivered, to the Purchaser (i) a valid assignment of the Exchanged Shares in writing with written notice to the Company to that effect (*provided, however*, that the time of delivery of such notice to the Company shall have to be agreed by the Purchaser) and evidence of a book transfer of the Exchanged Shares to the account of the Purchaser through SIS and (ii) a Seller's Certificate dated as of the Share Closing Date, and shall do all such other acts as may be required under Applicable Law and the articles of incorporation of the Company to transfer the Exchanged Shares and all rights connected therewith to the Purchaser.

(c)     At the Share Closing, subject to the approval of its extraordinary shareholders' meeting, the Purchaser shall (i) deliver the Share Consideration issued to and registered in the name of the Seller by crediting the Seller's share account in the Purchaser's register of shareholders with the Share Consideration together with a written confirmation to the Seller from the Purchaser of such entry and (ii) deliver the Purchaser's Certificate dated as of the Share Closing Date to the Seller.

(d)     It is hereby expressly agreed that, at any time during the period starting as of the Cash Closing Date and ending on the fifth (5th) Business Day after the date of the Purchaser's AGM, the Purchaser shall be entitled, at its sole discretion (*provided, however*, that the Purchaser shall be obligated to provide, at least five (5) Business Days in advance of the Cash Payment Option Closing Date, (i) a written notice to the Seller setting forth its decision to exercise the Cash Payment Option in whole or in part, (ii) the number of Exchanged Shares to be acquired by the Purchaser as a result of such exercise and (iii) the contemplated Cash Payment Option Closing Date), to acquire all of the Exchanged Shares for an amount equal to CHF 487,541,880 (four hundred eighty seven million five hundred forty one thousand eight hundred eighty Swiss Francs) in cash (the "**Cash Amount**") by wire transfer in immediately available funds to the Seller's Bank Account in lieu of the Share Consideration (the "**Cash Payment Option**"). Notwithstanding the immediately preceding sentence, the Purchaser may also elect to acquire only part of the Exchanged Shares in the context of the Cash Payment Option; in such event, the Cash Amount shall be reduced and calculated by multiplying the exact number of Exchanged Shares to be effectively acquired by the Purchaser pursuant to the partial exercise of the Cash Payment Option by CHF 21 (twenty one Swiss Francs), it being understood that the Exchanged Shares not to be effectively acquired by the Purchaser pursuant to the partial exercise of the Cash Payment Option (the "**Effectively Exchanged Shares**") shall be transferred to the Purchaser in consideration of a Share Consideration reduced in proportion to the ratio of the Effectively Exchanged Shares

7

---

over the initial amount of Exchanged Shares set forth in Section 2.1 above. The date on which the Cash Payment Option closing occurs is called the "**Cash Payment Option Closing Date**". In the event the Cash Payment Option is exercised by the Purchaser, subject to the satisfaction or waiver of all conditions set forth in Article VI below as of the Cash Payment Option Closing Date, the closing mechanics and deliveries shall be identical in all material respects to those set forth in Sections 2.2(b) and 2.2(c) (the "**Cash Payment Option Closing**").

(e)     In the event the issuance of the Share Consideration has not been approved or authorized by an extraordinary shareholders' meeting of the Purchaser at the latest on the date hereof and in each case, as applicable, as of the and the Cash Payment Option has not been exercised in full by the Purchaser as of such date, the Share Closing shall take place at the latest on the fifth (5th) Business Day following the date of the Purchaser's AGM in accordance with Applicable Law this Agreement (including the satisfaction or waiver of all conditions set forth in Article VI below as of the Share Closing Date), and the Purchaser agrees to pay to the Seller, as consideration for the Exchanged Shares, an amount equal to the Cash Amount by wire transfer in immediately available funds to the Seller's Bank Account in lieu of the Share Consideration (*provided, however*, that in the event of a partial exercise of the Cash Payment Option by the Purchaser prior to the fifth (5th) Business Day following the date of the Purchaser's AGM, the Cash Amount shall be reduced and calculated by multiplying the exact number of Exchanged Shares to be effectively acquired by the Purchaser pursuant to this paragraph (e) by CHF 21 (twenty one Swiss Francs)).

(f)     In the event of total or partial exercise of the Cash Payment Option and the Cash Payment Option Closing takes place after the Cash Closing, as the case may be, the Purchaser shall pay to the Seller the Interest by wire transfer in immediately available funds to the Seller's Bank Account. For the avoidance of doubt, the payment of the Interest shall be made as a single wire transfer on (i) the Cash Payment Option Closing Date in the event the Cash Payment Option is exercised in full by the Purchaser or (ii) on the Share Closing Date and/or the Cash Payment Option Closing Date, whichever occurs later, in the event the Cash Payment Option is exercised in part by the Purchaser.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Purchaser as of the date hereof and in each case, as applicable, as of the Cash Closing Date, the Share Closing Date and/or the Cash Payment Option Closing Date (or, if made as of a specified date, as of such date) as follows:

3.1     <u>Authorization</u>. The Seller has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated herein. The execution, delivery and performance by the Seller of this Agreement and the consummation by it of the transactions contemplated herein have been duly authorized by the Seller's competent corporate bodies, and no other corporate action on the part of Seller is necessary to authorize the execution and delivery by Seller of this Agreement or the consummation by it of the transactions contemplated herein. No vote of, or consent by, the holders of any class or series of

8

---

capital stock issued by the Seller is necessary to authorize the execution and delivery by the Seller of this Agreement or the consummation by it of the transactions contemplated herein.

3.2     <u>Binding Agreement</u>. This Agreement has been duly executed and delivered by the Seller and, assuming due and valid authorization, execution and delivery thereof by the Purchaser, this Agreement is a valid and binding obligation of the Seller enforceable against the Seller in accordance with its terms, except as limited by applicable bankruptcy, insolvency and other similar laws of general application affecting enforcement of creditors' rights generally.

3.3     <u>Organization</u>. The Seller is an *Aktiengesellschaft* duly organized and validly existing under the laws of Switzerland.

3.4     <u>Consents and Approvals; No Violations</u>. None of the execution, delivery or performance of this Agreement by the Seller, the consummation by the Seller of the transactions contemplated herein or compliance by the Seller with any of the provisions hereof will (i) conflict with or result in any breach of any provision of the articles of association or other organizational documents of the Seller; (ii) except for the regulatory, antitrust and other approvals, filings and notices set forth in Schedule 3.4 hereof, require any filing with, or permit, authorization, consent or approval of any Governmental Authority or other Person; (iii) require any consent, approval or notice under, or result in a violation or breach of, or constitute (with or without due notice or the passage of time or both) a default (or give rise to any right of termination, amendment, cancellation or acceleration) under, any of the terms, conditions or provisions of any material agreement to which the Seller is a party; (iv) violate any Applicable Law applicable to the Seller or any of its properties or assets; and (v) create any Encumbrance upon any of the Company Equity Securities; except in each case for any non–compliance which, individually or in the aggregate, would be immaterial.

3.5     <u>Ownership of Company Equity Securities</u>. The Seller is the sole legal and "**Beneficial Owner**" (as determined pursuant to Rule 13d–3 under the Exchange Act) of (i) (a) 14,185,350 Owned Shares and (b) 14,835,000 Purchase Rights as of the date hereof; (ii) (a) the Cash Shares and (b) 14,835,000 Purchase Rights as of the Cash Closing Date; and (iii) subject to the exercise of the Cash Payment Option by the Purchaser, the Exchanged Shares on the Share Closing Date and/or the Cash Payment Option Closing Date, as applicable. To the best of the Seller's knowledge, all of the Company Equity Securities are duly and validly authorized, issued, fully paid for and non–assessable and were acquired by the Seller in accordance with Applicable Laws. To the best of the Seller's knowledge, none of the Company Equity Securities were issued in violation of any preemptive rights. The Company Equity Securities are, and at all times up to and including the Cash Closing Date, the Share Closing Date and/or the Cash Payment Option Closing Date, as applicable, the Company Equity Securities will be, Beneficially Owned by the Seller, free and clear of any rights of first refusal, co–sale rights, security interests, liens, pledges, claims, options, charges, proxies, voting trusts or agreements, understandings or arrangement, or any other encumbrances of any kind or nature ("**Encumbrances**"). The Seller does not Beneficially Own any shares of capital stock of the Company or any securities of any nature convertible into, or exchangeable or exercisable for, shares of capital stock of the Company, other than the Company Equity Securities.

9

---

The Seller has the full power to dispose of the Company Equity Securities. As from the Registration Date at the latest, the Seller has the full power to vote or direct the voting of the Owned Shares and the Purchase Rights Shares. The Seller is not a party to, and the Company Equity Securities are not subject to or bound in any manner by, any contract or agreement of any nature relating to the Company Equity Securities, including any voting agreement, option agreement (other than the Purchase Rights), purchase agreement, shareholders' agreement, partnership agreement or voting trust.

3.6     <u>Compliance with Applicable Laws</u>. The Seller has complied in a timely manner and in all respects with Applicable Laws in connection with or related or arising as a result of the Seller's ownership of the Company Equity Securities, except for any non–compliance which, individually or in the aggregate, would be immaterial, and no notice, charge, claim, action or assertion has been received by the Seller or has been filed, commenced or, to the knowledge of the Seller, threatened against the Seller alleging any violation of the foregoing.