# EXHIBIT C

Offer Prospectus of April 5, 2007



## Public Tender Offer

by

### SCOR S.A., Puteaux, France

for all publicly held

### Registered Shares with a Nominal Value of CHF 5 each of Converium Holding Ltd, Zug

---

| | |
|---|---|
| **Overview:** | SCOR S.A. (**SCOR**) hereby submits a public tender offer for the shares of Converium Holding Ltd (**Converium**) (the **Offer**). Under the terms of the Offer, SCOR offers to exchange each registered share with a nominal value of CHF 5 of Converium into 0.5 newly issued shares with a nominal value of EUR 7.8769723 each of SCOR (each a **New SCOR Share**) and CHF 4 in cash. The offer price shall be reduced by any dilutive effects. The Offer is submitted to the conditions as set forth in Section B.9, the restrictions set forth under "Offer Restrictions" and the other terms and conditions set forth in this offer prospectus (the **Offer Prospectus**). |
| **Offer Period:** | April 23, 2007 to May 22, 2007, 4:00 p.m. CET (subject to extension). |

---

Financial Advisors:

        

Tender Agent:



| Converium Holding Ltd | Security Number | ISIN | Ticker Symbol |
|---|---|---|---|
| Registered shares with a nominal value of CHF 5 each not tendered for exchange | 1 299 771 | CH0012997711 | CHRN |
| Registered shares with a nominal value of CHF 5 each tendered for exchange (second trading line) | 2 973 347 | CH0029733471 | CHRNE |

| SCOR S.A. | | ISIN | Ticker Symbol |
|---|---|---|---|
| Shares with a nominal value of EUR 7.8769723 each | | FR0010411983 | SCR |

**Offer Restrictions**

*General*

The Offer to the shareholders of Converium and this Offer Prospectus have been prepared exclusively under Swiss laws and are subject to review and supervision by Swiss authorities only. The Offer is not subject to any formality, registration or approval outside Switzerland (except for the share offering circular *(prospectus d'admission)* which will be registered with the *Autorité des marchés financiers*). The Offer will not be made and may not be accepted in any jurisdiction where it breaches applicable law or where the applicable law requires SCOR in any way to change the Offer, to submit an additional application to any authorities or other institutions, or to take any additional actions in connection with the Offer (including, without limitation, Japan). SCOR shall not accept and shall have no obligation to accept any tenders made in connection with the Offer from any such jurisdiction. It is not intended to extend the Offer to any such jurisdictions. Documents related to the Offer may neither be distributed in such jurisdictions nor be sent into such jurisdictions. Such documents do not constitute and may not be used to solicit an offer to sell or to purchase securities by any persons in such jurisdictions. In addition, the delivery of the New SCOR Shares may be subject, in certain jurisdictions, to specific regulations or restrictions. The Offer is not addressed to persons subject to such restrictions, either directly or indirectly.

Persons in possession of this Offer Prospectus or any other document relating to the Offer are required to obtain information about any local restriction that may apply and comply therewith. SCOR declines any liability for any violation of any applicable restrictions by any person.

*U.S.A.*

This Offer Prospectus does not constitute an offer to sell or a solicitation of an offer to buy securities in the United States or to or from U.S. persons (as defined in Regulation S under the U.S. Securities Act of 1933, as amended) and the Offer will not be made in or into the United States and may not be accepted by U.S. persons or persons in the United States. Accordingly, copies of this Offer Prospectus are not being made available and should not be mailed or otherwise distributed or sent in, into or from the United States, and persons receiving this Offer Prospectus (including custodians, nominees and trustees) must not distribute or send them into or from the United States. Shareholders of Converium who accept the Offer will, unless otherwise agreed by SCOR, be deemed to certify they are not located in the United States and are not U.S. persons.

*U.K.*

The materials relating to the Offer are to be directed only at persons in the U.K. who (a) have professional experience in matters relating to investments, (b) are falling within Article 49 (2)(a) to (d) ("high net worth entities, unincorporated associations, etc") of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005, or (c) to whom they may otherwise lawfully be communicated (all such persons together being referred to as **"relevant persons"**). In the U.K., the materials relating to the Offer are not to be acted on or relied on by persons who are not relevant persons. In the U.K., any investment or investment activity to which the materials relating to the Offer relate is available only to relevant persons and will be engaged in only with relevant persons.

**Financial Advisors | Tender Agent**

SCOR has retained BNP Paribas and UBS Investment Bank as financial advisors (together, the **Financial Advisors**) and UBS Investment Bank as tender agent (the **Tender Agent**) for purposes of the Offer. None of the Financial Advisors and the Tender Agent have prepared this Offer Prospectus, and no representation or warranty, express or implied, is made by any of the Financial Advisors or the Tender Agent or any of their respective affiliates or any person acting on their behalf as to the accuracy or completeness of the information contained in this Offer Prospectus.

**Forward Looking Statements**

This Offer Prospectus contains forward looking statements, such as statements regarding developments, plans, intentions, estimates, expectations, belief, potential effects or the description of future events, prospects, revenues, results or situations. These are based on SCOR's current expectations, beliefs and assumptions. They are uncertain and may materially differ from the actual facts, situation, effects or developments.

**Approval by Takeover Authorities**

The Offer and this Offer Prospectus are subject to review and approval by the Swiss takeover authorities who may order changes or amendments to the Offer or this Offer Prospectus.

**Risks**

**Exchanging shares of Converium into shares of SCOR involves risks and the price and value of the shares of SCOR may fall with the effect that investments in the shares of SCOR may lose all or part of their value. This Offer Prospectus has been prepared pursuant to, and in accordance with, Swiss takeover laws. For more information on certain risks related to SCOR and to the Offer and the combination, please consult the SCOR share offering circular *(prospectus d'admission)*, which incorporates the SCOR 2006 annual report *(document de référence)*, which will become available on SCOR's website (www.scor.com).**

## A. The Combination of SCOR and Converium

### 1. Introduction

On February 26, 2007, SCOR published the pre-announcement of this Offer. SCOR hereby submits the Offer in accordance with art. 22 et seq. of the Federal Act on Stock Exchanges and Securities Trading (**SESTA**) for the publicly held shares of Converium.

Upon settlement of the Offer, Converium shareholders receiving New SCOR Shares in the Offer will become SCOR shareholders. Assuming that all the shares of Converium included in the scope of the Offer (see Section B.2) will be tendered, Converium shareholders will hold approximately 28% of SCOR (provided that the purchase price for the two share purchase agreements, see section E.4, is settled by the issuance of new shares, see section C.2) or approx. 31% (without such issuance of shares).

### 2. Information on SCOR

SCOR is the leading French reinsurance company with operations in more than 130 countries. In addition to its reinsurance activities, SCOR also offers certain direct property and casualty insurance covers.

SCOR group's reinsurance activities encompass:

*Non-life*

SCOR group's non-life reinsurance activities are coordinated through SCOR's wholly-owned subsidiary SCOR Global P&C S.A. and generated gross written premiums of approximately EUR 1.8 billion in 2006. The non-life reinsurance business is divided into the following three sub-segments:

- The sub-segment *treaty* includes all property and casualty lines of business on proportional and non-proportional basis. It principally encompasses general property (personal, commercial and industrial lines), natural catastrophe risks, motor and general liability and marine.

- The sub-segment *specialties* includes credit & surety, inherent defects insurance, space, aviation and agri-business.

- The sub-segment *business solutions (facultatives)* includes covers for all kinds of insurable risks of industrial groups and service companies.

*Life*

SCOR group's life reinsurance activities are conducted by SCOR's wholly-owned subsidiary SCOR Global Life S.A., directly or through its subsidiaries and branches. On November 21, 2006, SCOR acquired Revios Rückversicherung-AG, the former life reinsurance unit of the Gerling Globale Re group based in Cologne, thereby creating the fifth largest life reinsurer in the world with gross written premiums of approximately EUR 2.3 billion in 2006 on a pro forma basis.

SCOR's life reinsurance business includes the reinsurance of life products (mortality and morbidity risks) as well as fixed annuity savings products (in the US only) and personal lines reinsurance, namely accident, health, disability, unemployment and long-term care.

### 3. Reasons for the Combination

The combination of SCOR and Converium will create the fifth largest publicly listed global reinsurer in terms of gross written premiums based on Standard & Poor's Global Reinsurance Highlights figures (edition 2006). It will create a powerful multi-line reinsurer covering all major markets.

SCOR expects that the combination of SCOR and Converium will lead to accelerated growth, improved risk management and reduced earnings volatility:

- The combined group will benefit from an enlarged non-life book of business, well-balanced between the three sub-segments treaties, specialty lines and business solutions (facultatives).

- The combined operations would be strongly diversified by geographical markets.

- The combination will further benefit from a highly diversified revenue base, well-balanced between life and non-life business lines, resulting in an increased ability to resist in case of any large unexpected losses.

In addition, SCOR expects significant synergies to be extracted from various sources which would lead to improved group efficiency, including reduction in corporate functions, reduction in life and non-life operating administrative expenses and cost reductions in IT, the optimization of retrocession costs, tax optimization, access to improved funding conditions, improved market position, the sharing of best underwriting practices and increased investment returns.

The combination will benefit clients and brokers by providing them a wider range of services and covers on a large geographical scale.

## B. The Offer

### 1. Pre-announcement

SCOR published the pre-announcement of this Offer on February 26, 2007 in the electronic media and on February 28, 2007 in the "Neue Zürcher Zeitung" and "Le Temps".

### 2. Scope of the Offer

Except as set forth under "Offer Restrictions", the Offer is made for all publicly held registered shares of Converium with a nominal value of CHF 5 each (the **Converium Shares**), including all Converium Shares (if any) issued until the end of the Additional Acceptance Period (see Section B.7). The Offer is neither made with respect to treasury shares held or acquired in the future by Converium or its subsidiaries nor with respect to Converium Shares, for which SCOR has entered into share purchase agreements (see Section E.4). The Offer does not relate to outstanding options or American Depositary Shares of Converium.

Accordingly, the Offer is for a maximum of 106,369,112 Converium Shares, as set out in the following overview:

| | |
|---|---|
| Issued Converium Shares | 146,689,462 |
| Maximum number of Converium Shares which could be issued based on Converium's existing authorized and conditional share capital | 8,000,000 |
| Less the number of Converium Shares currently held by SCOR or its group companies | (12,200,000) |
| Less the number of Converium Shares to be acquired by SCOR under the share purchase agreements described in Section E.4 | (36,120,350) |
| Maximum number of Converium Shares to which the Offer relates | 106,369,112 |

### 3. Offer Price

SCOR offers for each Converium Share tendered (i) 0.5 New SCOR Shares with a nominal value of EUR 7.8769723 each and (ii) CHF 4 in cash (collectively taking into account any adjustments as set forth below, the **Offer Price**). Based on the closing price of the SCOR Shares on the Euronext Paris (Eurolist) on February 23, 2007 (the trading day preceding the date of the pre-announcement of this Offer), the Offer Price values each Converium Share at CHF 21.25.

For purposes of this calculation, the following currency exchange rate has been applied (closing price of February 23, 2007, EUR | CHF on Euronext Paris): EUR 1 = CHF 1.6262.

The New SCOR Shares give a right to any dividends distributed for the business year 2006 if the Offer is settled prior to the payment of such dividends. If the Offer is settled after such payment, Converium shareholders will receive for each tendered Converium Share an amount in cash in CHF equal to 50% of the amount of the dividend paid (in EUR) per SCOR Share for the business year 2006. The amount will be converted to CHF at the exchange rate EUR/CHF applicable on the day preceding the settlement of the Offer.

In its meeting of April 3, 2007, SCOR's board of directors resolved to propose to the general meeting of shareholders of May 24, 2007 a dividend for the business year 2006 of EUR 0.80 per SCOR Share.

The Offer Price will be reduced by the gross amount of any dilutive effects in respect of the Converium Shares prior to the consummation of the Offer, including, but not limited to, dividend payments and other distributions of any kind, demergers, capital increases and the sale of treasury shares with an issuance price or sales price per share below the stock market price (but excluding the sale of treasury shares in connection with the exercise of options that have been issued prior to October 1, 2006 at the terms set out in such options at such date) and the purchase of treasury shares with a purchase price above the stock market price, the issuance of options, warrants, convertible securities and other rights of any kind to acquire Converium Shares and repayments of capital. Adjustments for dilutive effects will first be made by a reduction of the cash portion of the Offer Price by the gross amount of the dilutive effects. A dilutive effect exceeding the cash portion of the Offer Price would, if the Offer is upheld, lead to a reduction also of the share portion of the Offer Price.

### 4. Fractions

Fractional entitlements to New SCOR Shares resulting from the exchange ratio will not be delivered but pooled and the corresponding New SCOR Shares will be sold. The net proceeds of the sales will be converted from EUR to CHF

4

at the then applicable exchange rate and distributed to the Converium shareholders with fractional entitlements on a pro rata basis.

## 5. Share Prices

*Converium Shares:* The range of closing prices of the Converium Shares on the SWX Swiss Exchange was as follows during the periods indicated (in **CHF**):

|  | 2004 | 2005 | 2006 | 2007* |
|---|---|---|---|---|
| High | 37.03 | 14.50 | 16.70 | 21.60 |
| Low | 7.59 | 9.07 | 11.95 | 16.50 |

* January 1, 2007 until February 23, 2007, the trading day immediately preceding the date of the pre-announcement of this Offer.

(Source: Bloomberg)

*SCOR Shares:* The range of closing prices of the SCOR Shares (as defined below) on the (Eurolist) was as follows during the periods indicated (in **EUR**):

|  | 2004* | 2005* | 2006* | 2007** |
|---|---|---|---|---|
| High | 16.96 | 17.83 | 22.60 | 23.27 |
| Low | 9.87 | 13.51 | 15.33 | 19.27 |

* As adjusted to reflect the January 3, 2007 reverse-stock split.

** January 1, 2007 until February 23, 2007, the trading day immediately preceding the date of the pre-announcement of this Offer.

(Source: Bloomberg)

## 6. Offer Period

This Offer may be accepted from April 23, 2007 to May 22, 2007, 4:00 p.m. CET (the **Offer Period**). This Offer may not be accepted during a period of ten trading days (cooling-off period), starting on the day of the publication of this Offer Prospectus, i.e. from April 5, 2007 to April 20, 2007.

SCOR reserves the right to extend the Offer Period up to a total of 40 trading days. In case of an extension of the Offer Period, the start of the Additional Acceptance Period and the Settlement Date (as defined below) will be postponed accordingly. An extension of the Offer Period beyond 40 trading days may occur with the consent of the Swiss Takeover Board.

## 7. Additional Acceptance Period

If the Offer is successful, an additional acceptance period of ten trading days (the **Additional Acceptance Period**) for subsequent acceptance of the Offer will be available after the expiration of the (possibly extended) Offer Period. If the Offer Period is not extended, the Additional Acceptance Period is expected to run from May 29, 2007 to June 11, 2007, 4:00 p.m. CET.

## 8. Completion

The exchange of the Converium Shares tendered during the Offer Period and during the Additional Acceptance Period for New SCOR Shares will be completed within ten trading days after the end of the Additional Acceptance Period (the **Settlement Date**). This is expected to take place on June 21, 2007, subject to the Offer becoming or being declared unconditional and the completion not being delayed due to conditions subsequent. The cash portion of the Offer Price will be paid simultaneously.

The cash payments compensating the fractional entitlements in New SCOR Shares based on Converium Shares tendered during the Offer Period or the Additional Offer Period will be made with value date on or around the Settlement Date.

9. **Conditions**

The Offer is subject to the following conditions:

(a) SCOR shall have received, until the end of the Offer Period, valid acceptances for Converium Shares representing, when combined with the Converium Shares that SCOR and its subsidiaries will own at the end of the Offer Period, at least 50.01 % of the share capital and of the voting rights issued at the end of the Offer Period or the issuance of which has been approved by the shareholders' meeting of Converium by the end of the Offer Period (including the share capital and voting rights that could be issued based on Converium's existing authorized and conditional share capitals, and taking into account any other dilution);

(b) All waiting periods applicable to the acquisition of Converium by SCOR shall have expired or been terminated and all competent merger control authorities and all other competent regulatory authorities, including insurance authorities, shall have approved, and/or, as the case may be, not prohibited or objected to, the Offer and the acquisition of Converium by SCOR without them or their group companies being required to meet any condition or requirement that has a Material Adverse Effect. For purposes hereof, a **Material Adverse Effect** shall mean any matter or event (other than the sale of Converium's North American operations) that, in the opinion of a reputed, independent accounting firm or investment bank appointed by SCOR, individually or together with other matters or events is suitable to cause, on a future consolidated financial statement of Converium group, a reduction of:

  (i) the consolidated earnings (or an increase of consolidated loss, as applicable) before interest and taxes (**EBIT**) of USD 11.6 million (corresponding to 10 % of the EBIT of Converium group in the financial year 2005 as per the consolidated annual report 2005 of Converium) or more; or

  (ii) the consolidated gross premiums written of USD 99.72 million (equal to 5 % of the gross premiums written of Converium group in the financial year 2005 as per the consolidated annual report 2005 of Converium) or more; or

  (iii) the consolidated shareholders' equity of Converium of USD 189.8 million (equal to 10 % of the consolidated shareholders' equity of Converium group as at September 30, 2006 as per the consolidated Q3/2006 report of Converium) or more;

(c) No court or governmental authority shall have issued a decision or an order preventing, prohibiting or declaring illegal the consummation of the Offer;

(d) The board of directors of Converium shall have resolved to register SCOR and its subsidiaries, respectively, as shareholders with voting rights with respect to all Converium Shares that SCOR and its subsidiaries have acquired or may acquire or, subject only to the Offer becoming unconditional, may acquire in the Offer;

(e) Until the end of the Offer Period, no matters or events shall have occurred, and no matters or events shall have been disclosed by Converium or otherwise come to SCOR's attention which have a Material Adverse Effect (as defined above);

(f) The shareholders' meeting of Converium shall not have approved a dividend, sale, purchase or demerger in an amount of USD 189.8 million or more, nor a merger or an ordinary, authorized or conditional increase of the share capital of Converium. Since October 1, 2006, Converium has not undertaken to acquire or dispose of assets for a price or with a value of USD 189.8 million or more (other than the sale of Converium's North American operations);

(g) The approval of the SCOR shareholders' meeting to issue or have issued the New SCOR Shares shall have been obtained;

(h) The New SCOR Shares issued upon consummation of the Offer shall have been admitted to listing on the Euronext Paris (Eurolist).

The above conditions shall be conditions precedent within the meaning of art. 13 para. 1 of the Ordinance of the Takeover Board on Public Takeover Offers (**TOO**). After the end of the (possibly extended) Offer Period, the conditions set out in (b), (c), (d), (f), (g) and (h) above shall be conditions subsequent within the meaning of art. 13 para. 4 TOO; provided that condition (g) shall be deemed not satisfied if the shareholders' meeting of SCOR to be convened to satisfy condition (g) does not approve the issuance of the New SCOR Shares.

6

SCOR reserves the right to waive in whole or part any or all of the conditions set forth above. If conditions are neither satisfied nor waived by SCOR on or by the end of the Offer Period, SCOR has the right:

(i) to declare the Offer as being successful; however, in such case, SCOR shall be entitled to postpone the settlement of the Offer by no more than four months following the end of the additional acceptance period (or such longer period as may be approved by the Swiss takeover board), whereby the Offer lapses without further effect if the conditions subsequent set forth in (b), (c), (d), (f), (g) and (h) are neither fulfilled nor waived by SCOR, during these additional four months (or such longer period as may be approved by the Swiss takeover board); or

(ii) to declare the Offer as having failed without further effect.

## C. Information about the Offeror

### 1. Name, Seat, Purpose

SCOR is a French corporation (*société anonyme*), having its corporate seat in Puteaux, France. SCOR has recently announced its decision to carry out a conversion into a *Societas Europaea* (SE), such conversion remaining subject to the approval of SCOR's shareholders' meeting. Such conversion is expected to be completed during the second quarter of 2007 and will not have any impact on the rights of SCOR's shareholders, who will automatically become shareholders of SCOR SE.

The principal purpose of SCOR is, either directly or indirectly, and worldwide, to conduct reinsurance business or retrocession of all types, in all branches and in all countries, to assume, in whatever form, reinsurance treaties or commitments, and to create, acquire, rent, lease, install and operate any business and establishments connected with these activities.

### 2. Share Capital

The share capital of SCOR amounts to EUR 932,673,756 divided into 118,405,108 shares with a nominal value of EUR 7.8769723 each, which may be in registered or bearer form (see Section C.4) (the **SCOR Shares**).

*Reverse Share Split*

Further to a reverse stock-split on January 3, 2007, by which each 10 old SCOR shares with a nominal value of EUR 0.78769723 each (the **Old SCOR Shares**) have been exchanged for 1 SCOR Share, a limited amount of Old SCOR Shares corresponding to fractional amounts of SCOR shares remains listed on the Euronext Paris (Eurolist) under ticker symbol "SCO" until at least July 3, 2007. On January 3, 2009, the Old SCOR Shares will be cancelled.

*Payment in Full*

The Old SCOR Shares and the SCOR Shares are fully paid-in.

*Planned Capital Increases*

For the purpose of the settlement of the Offer, it is intended that SCOR's share capital be increased by an aggregate nominal value of up to EUR 418,933,274.40 by the issuance, the New SCOR Shares being issued without preferential subscription right of the existing shareholders, of up to 53,184,556 New SCOR Shares with a nominal value of EUR 7.8769723 each to the tendering shareholders of Converium. The New SCOR Shares shall rank *pari passu* with the SCOR Shares.

In addition, for the settlement of the share purchase agreements entered into with Patinex AG (**Patinex**) and Alecta pensionsförsakring, ömsesidigt (**Alecta**) (see Section E.4) SCOR's share capital shall be increased by an aggregate nominal value of up to EUR 140,503,209.08 by the issuance, without preferential subscription right of the existing shareholders, of up to 17,837,210 new SCOR Shares provided that the cash payment alternative is not implemented.

The issuance of up to 10,470,000 new SCOR Shares upon conversion of OCEANEs and the issuance of up to 2,588,128 new SCOR Shares upon exercise of options rights under the stock options plans (see Section C.3), were authorized by the respective shareholders' meetings which authorized the issuance of the OCEANEs or the creation of such option plans, as applicable. For the purpose of participation plans, the issuance of another 1,698,900 new SCOR Shares was authorized on May 16, 2006. Such capital increases shall be made under exclusion of the preferential subscription rights of the existing shareholders.

7

Further, SCOR's shareholders' meeting of May 16, 2006 authorized the issuance of 8,471,798 new SCOR Shares with shareholders' preferential subscription right. This authorization will, in principle, expire on November 15, 2007.

## 3.  Options and Conversion Rights

SCOR currently has 13 stock option plans for the acquisition or subscription of shares. The stock option plans for the years 1997, 2003, 2004, 2005 and 2006 would result, if the options are exercised, in the issuance of 2,588,128 new SCOR Shares with a nominal value of EUR 7.8769723 each. The stock option plans for the years 1998 to 2001 will, upon exercise, be served with treasury SCOR Shares and thus do not result in the issuance of new SCOR Shares.

SCOR also has 100,000,000 convertible bonds outstanding in a total principal amount of EUR 200,000,000 with maturity date January 1, 2010 (the **OCEANEs**). The OCEANEs are convertible into new SCOR Shares, or exchangeable for existing SCOR Shares. Holders of OCEANEs may request conversion or exchange of their bonds for shares at any time. Upon such request, SCOR may provide new SCOR Shares to be issued or existing treasury SCOR Shares at its discretion. SCOR has a right of early redemption under certain conditions after January 1, 2008. The OCEANEs, if converted into new SCOR Shares in full, would result in the issuance of 10,470,000 new SCOR Shares.

## 4.  Information on SCOR Shares

The SCOR Shares and the New SCOR Shares will constitute one single category of shares with the same rights. Except for the payment of the nominal value of the shares, shareholders of SCOR do not have any obligations. A shareholder owning, directly or together with other parties acting in concert, at least 95 % of the voting rights of SCOR may be required to acquire the shares held by the minority shareholders against compensation. A shareholder owning, directly or together with other parties acting in concert, at least 95 % of the voting rights and the share capital of SCOR may squeeze-out the minority shareholders against compensation.

*Transfer of SCOR Shares*

SCOR Shares may be held either in registered or bearer form, at the holder's discretion. While there are no transfer restrictions set forth in SCOR's articles of association, the transfer of larger blocks of SCOR Shares requires the approval of the competent insurance regulatory authorities in countries where SCOR either has a reinsurance/insurance license or a reinsurance/insurance subsidiary. SCOR Shares are traded on the Euronext Paris (Eurolist). According to Article R. 211-5 of the French Monetary and Financial Code, prior to any transfer on the Euronext Paris (Eurolist) of securities held in registered form, the securities must be converted into bearer form and accordingly inscribed in an account maintained by an accredited intermediary with Euroclear France S.A., a registered clearing agency. The transfer of ownership of securities traded on the Euronext Paris (Eurolist) occurs at the time of registration of the securities in the appropriate shareholder's account.

*Shareholders' meetings*

The annual ordinary general meeting must be held within six months of the end of the fiscal year. *Inter alia,* ordinary general meetings have authority:

- to approve the annual accounts;
- to decide upon the allocation of the benefits and the distribution of the dividends; and
- to appoint and renew the members of the board and the statutory auditors.

An ordinary general meeting may validly deliberate when first convened only if the shareholders present or represented hold at least one fifth of the voting rights. If it is reconvened, no quorum is required. Its resolutions are taken by a majority of the votes cast by the shareholders present or represented.

Certain decisions are reserved to extraordinary shareholders' meetings such as:

- to issue securities granting direct or indirect access to the share capital;
- to decrease the share capital;
- to amend the articles of association and, subject to certain restrictions, change the nationality of the company;

- to decide upon mergers or demergers; and
- to decide upon the liquidation of the company.

An extraordinary general meeting may validly deliberate when first convened only if the shareholders present or represented hold at least one quarter of the voting rights and, if reconvened, one fifth of the voting rights. Failing this, the second meeting may be postponed to a date not later than two months after the date originally scheduled. Decisions of an extraordinary shareholders' meeting require a majority of two thirds of the votes cast by the shareholders present or represented.

SCOR's shareholders' meetings are generally called by way of two publications in the *Bulletin des Annonces légales obligatoires* (http://balo.journal-officiel.gouv.fr), the preliminary notice (*avis de réunion*) occurring at least 35 calendar days prior to the date of the meeting and the invitation notice (*avis de convocation*) occurring at least 15 calendar days prior to the date of the meeting, identifying the place, time and agenda of the meeting. Registered holders are called by way of mail. Press releases are issued at the same time as the publications in the *Bulletin des Annonces légales obligatoires* are made and are published on the *Autorité des marchés financiers* website (www.amf-france.org) and on SCOR's website (www.scor.com).

Any shareholder may attend, in person or through a proxy, the meetings, upon verification of identity and of the ownership of the shares, either by signing the shareholders' register or presenting a certificate from an accredited intermediary (custody bank). For that purpose, bearer shares are required to be immobilized, three trading days at 0:00 prior to the shareholders' meetings. Shareholders may, under conditions set by applicable laws and regulations, vote by proxy or by mail, either in paper form or in electronic form. Upon a decision of SCOR's board of directors (the **Board of Directors**), shareholders may also attend shareholders' meetings by videoconference or by any means of telecommunication that allows identifying them.

*Voting rights*

Each SCOR Share has voting rights in proportion to the amount of the share capital it represents. Consequently, until the end of the Conversion Period, the Old SCOR Shares have one voting right and the SCOR Shares other than Old SCOR Shares have ten voting rights. When SCOR Shares are held in usufruct, the voting rights attached to such SCOR Shares belong to the grantee in ordinary general meetings and to the legal owner in extraordinary general meetings.

*Issuance of new shares*

Any increase of SCOR's share capital requires an amendment of the articles of association. Issuance of new shares must be, on the basis of a report from the Board of Directors, either approved by SCOR's extraordinary shareholders' meeting or authorized by it. The extraordinary shareholder's meeting may delegate to the Board of Directors (i) the power to determine the terms and conditions of the issuance (**Delegation of Powers**) or (ii) the authority to decide to proceed with the issuance (**Delegation of Authority**).

In the event of a Delegation of Powers, the issuance should be completed by the Board of Directors within five years of the granting of such delegation.

In the event of a Delegation of Authority, the extraordinary shareholders' meeting shall set a time limit for the exercise of such authority, which may not exceed twenty-six months, and the aggregate maximum amount of new shares which may be issued on the basis of such delegation.

Within the limits of the delegation (powers or authority) given by the shareholders' meeting, the Board of Directors has the powers to determine the conditions of the issuance, to declare the completion of the resulting capital increases and to amend the articles of association accordingly. The Board of Directors shall prepare a report on the use made of such delegation (powers or authority) which must be made available to the shareholders at SCOR's corporate headquarters within 15 calendar days after the respective meeting of the Board of Directors and be presented at the next shareholders' meeting.

The Board of Directors may, within the limits set forth by the shareholders' meeting, delegate to the Chief Executive Officer, or, with his agreement, to one or more Chief Operating Officers, the power to decide to proceed with the issuance, or to postpone it. The persons thus authorized are in charge of preparing the report on the use made of such delegation in the same manner, as the Board of Directors otherwise would have had to.

In principle, any capital increase in cash results in preferential subscription rights to new SCOR Shares being granted to the existing shareholders, in proportion to the total nominal amount of the SCOR Shares they own. However, the shareholders' meeting which decides upon or authorizes a capital increase may cancel the preferential

9

subscription rights for all or part of the capital increase and may grant a preferential subscription period for shareholders. Shareholders may individually renounce to their preferential subscription rights.

*Reduction of share capital*

Upon a report of the statutory auditors of SCOR presenting their assessment of the reasons and arrangements for the share capital reduction, SCOR's extraordinary shareholders' meeting may decide to reduce the capital or authorize the Board of Directors to do so. Upon any capital reduction carried out by the Board of Directors, it must (i) prepare a report thereon which must be published and (ii) amend the articles of association appropriately.

SCOR's share capital can be reduced by cancellation of SCOR Shares or reduction of their nominal value.

*Dividends*

SCOR's ordinary shareholders' meeting determines the distribution of dividends, after the approval of the annual accounts.

Pursuant to the French Commercial Code *(Code de commerce)* and SCOR's articles of association, SCOR's net income in each fiscal year, less, as the case may be, (i) any loss carried forward from prior years and (ii) the contribution to the legal reserve plus, as the case may be, any profit carried forward from prior years, is available, as distributable benefit, for distribution to the shareholders of SCOR.

The contribution to the legal reserve has to amount to 5 % of the net income less any loss carried forward and must be made until the legal reserve in the aggregate amounts to 10 % of the total nominal value of the share capital. The 10 % legal reserve is distributable only upon the liquidation of SCOR.

SCOR's articles of association also provide that profits available for distribution can be allocated to one or more optional reserves or distributed among all of the shares in proportion to their paid-in and non-redeemed amount as dividends, as may be decided by the general meeting of shareholders.

Dividends may also be distributed from optional reserves of SCOR, subject to approval by the shareholders and certain limitations, either as an addition to an annual dividend distribution or as an exceptional dividend distribution.

Unless a capital reduction is carried out, no distribution may be made to the shareholders of SCOR when the shareholders' equity is, or would thereby become, lower than the amount of the share capital plus the legal reserves and any reserve pursuant to the articles of association. SCOR's articles of association do not currently provide for a reserve.

If SCOR has a distributable benefit (as shown on a balance sheet audited by SCOR's statutory auditors), the Board of Directors has the authority, subject to applicable laws and regulations, without shareholder approval, to decide upon the distribution of interim dividends.

When distributed, dividends are paid to all shareholders in proportion to their rights in the share capital of SCOR. Dividends are, in principle, payable to holders of SCOR Shares outstanding on the date of the shareholders' meeting approving the distribution of dividends or, in the case of interim dividends, on the date of the meeting of the Board of Directors approving the distribution of interim dividends. The actual dividend payment date and the modalities of such payment are determined by the shareholders at the ordinary general meeting approving the declaration of the dividends or by the Board of Directors in the absence of such determination by the shareholders. The payment of the dividends must occur within nine months of the end of SCOR's fiscal year. Dividends not claimed within five years of the date of payment belong to the French State.

According to SCOR's articles of association, shareholders may decide in an ordinary shareholders' meeting to give each shareholder the option of receiving all or part of a dividend or interim dividend in the form of SCOR Shares.

*Merger, dissolution and liquidation*

The merger, dissolution or liquidation of SCOR must be decided by its extraordinary shareholders' meeting.

In the event that SCOR is liquidated, the assets of SCOR remaining after payment of its debts, liquidation expenses and all of its remaining obligations will be used first to repay in full the nominal value of the SCOR Shares, then the surplus, if any, will be distributed among the holders of SCOR Shares in proportion to the nominal value of their shareholdings and subject to any special rights granted to holders of preferred shares, if any.

5. **Dividends Paid During the last 5 Years**

For the financial year 2001, SCOR paid a dividend of EUR 11 million (or EUR 0.30 per Old SCOR Share). SCOR paid no dividends for the years 2002 and 2003. In respect to the financial years 2004 and 2005, SCOR paid a dividend of EUR 24 million (or EUR 0.03 per Old SCOR Share) and EUR 48 million (or EUR 0.05 per Old SCOR Share), respectively.

As to the dividend for the business year 2006 which will be proposed to the annual shareholders' meeting in 2007, see Section B.3.

6. **Significant Shareholders of SCOR**

Shareholders of SCOR must notify SCOR by registered mail, with acknowledgment of receipt, of the total number of SCOR Shares they hold, within five stock market trading days from the date on which they come to hold, either directly or indirectly, a number of SCOR Shares resulting in the crossing of an ownership threshold, either above or below 2.5 % of the share capital or 5 %, 10 %, 15 %, 20 %, 25 %, 33⅓ %, 50 %, 66⅔ %, 90 % or 95 % of the share capital or the voting rights. With respect to the crossing of ownership threshold of 5 %, 10 %, 15 %, 20 %, 25 %, 33⅓ %, 50 %, 66⅔ %, 90 % or 95 % of the share capital or the voting rights, a notification shall also be made to the *Autorité des marchés financiers* within the same deadline.

Failure to notify the crossing of a threshold may be penalized by cancellation of voting rights exceeding such threshold for a period of two years until after the notification of the thresholds crossing has been regularized. In addition, SCOR's chairman, any shareholder or the *Autorité des marchés financiers* may request that the Nanterre commercial court decides to cancel all the voting rights of a shareholder who would have failed to make such a notification for a period lasting up to five years. It may also result in a fine up to EUR 18,000. Lastly, in the event where the *Autorité des marchés financiers* deems that failure to make such a notification would jeopardize the rights of investors, disrupt the market's normal functioning, procure an unjustified advantage for the investors which they would not have otherwise obtained in a normal market context, or jeopardize the equality of information to investors, or of the treatment of investors or their interests, it can order the payment of a fine up to the higher of EUR 1,500,000 or ten times the realized profits.

SCOR has the right to request at any time from the central depository, which keeps its securities accounts, such information enabling, under the legal conditions and regulations in effect, identification of the holders of securities, which confer immediate or deferred right to vote at meetings, as well as the quantity of securities held by each of them and, if applicable, the restrictions that may affect the SCOR Shares.

Silchester International Investors Ltd. notified to hold, for their own account, 7,953,345 SCOR Shares, which corresponded to approximately 6.7 % of the share capital and 6.9 % of the voting rights. SCOR is not aware of any other shareholder or group of shareholders that hold more than 5 % of SCOR's capital or voting rights. The percentage of voting rights is determined in principle based on the number of SCOR Shares, after deduction of the SCOR Shares owned by SCOR or its subsidiaries.

Pursuant to French law, any provision of an agreement stipulating preferential terms for the sale or purchase of SCOR Shares representing at least 0.5 % of SCOR's share capital or voting rights shall be communicated to the *Autorité des marchés financiers* within five trading days of its execution or termination. Failure to communicate such provision results in the ineffectiveness of such provision. To SCOR's knowledge, no such provision has been transmitted to the *Autorité des marchés financiers*.

7. **Listing**

SCOR Shares and Old SCOR Shares are listed on the Euronext Paris (Eurolist) under the ticker symbols "SCR" and "SCO" respectively. *American Depositary Shares* on SCOR Shares are quoted on the New York Stock Exchange, under the ticker symbol "SCO" (see Section C.12). SCOR Shares are also traded on the Frankfurt over-the-counter market (*Freiverkehrshandel*).

SCOR will apply for the listing of the New SCOR Shares on the Euronext Paris (Eurolist) and for trading to be commenced on or shortly after the Settlement Date. Furthermore, SCOR intends to apply for a secondary listing of the SCOR Shares on SWX Swiss Exchange.

## 8. Board of Directors of SCOR

The principal responsibility of SCOR's Board of Directors is to determine the guiding principles of SCOR's business plan and strategy and to monitor their application. In addition, the Board of Directors prepares and presents the year-end accounts of SCOR to the shareholders and convenes shareholders' meetings.

The Board of Directors is entitled to appoint and remove at any time the Chairman and Chief Executive Officer (*Président et Directeur Général*), as well as to appoint separate persons to hold the positions of Chairman of the Board (*Président du Conseil d'Administration*) and Chief Executive Officer (*Directeur Général*). Upon a proposal made by the Chairman and Chief Executive Officer, the Board of Directors may also appoint a Chief Operating Officer (*Directeur Général Délégué*) to assist the Chairman and Chief Executive Officer in managing the company's affairs.

The Board of Directors, during its meeting held on April 18, 2002, decided that SCOR's general management would be ensured by a Chairman of the Board of Directors with the title of Chairman and Chief Executive Officer and seconded by a Chief Operating Officer.

The Board of Directors of SCOR currently consists of:

| | |
|---|---|
| Denis Kessler | Chairman and Chief Executive Officer of SCOR |
| Carlo Acutis | Director |
| Antonio Borges | Director |
| Allan Chapin | Director |
| Daniel Havis | Director |
| Daniel Lebègue | Director |
| Helman Le Pas de Sécheval | Director |
| André Levy-Lang | Director |
| Herbert Schimetscheck | Director |
| Jean-Claude Seys | Director |
| Jean Simonnet | Director |
| Claude Tendil | Director |
| Daniel Valot | Director |
| Georges Chodron de Courcel | Non-voting Director |

## 9. Executive Committee of SCOR

Subject to the powers expressly reserved by law to the Board of Directors or to the shareholders, the Chairman and Chief Executive Officer has the authority to manage the affairs of SCOR, to act on behalf of SCOR and to represent SCOR in dealings with third parties. The Chairman and Chief Executive Officer determines, and is responsible for the implementation of, the goals, strategies and budgets of SCOR, which are reviewed and monitored by the Board of Directors. To assist him in his tasks, the Chairman and Chief Executive Officer can rely on an executive committee.

The executive committee currently consists of:

| | |
|---|---|
| Denis Kessler | Chairman and Chief Executive Officer of SCOR |
| Patrick Thourot | Chief Operating Officer of SCOR |
| Victor Peignet | Chief Operating Officer of SCOR Global P&C |
| Yvan Besnard | Deputy Chief Executive Officer of SCOR Global P&C |
| Jean-Luc Besson | Chief Risk Officer |
| Marcel Kahn | Group Chief Financial Officer |
| Henry Klecan | President and Chief Executive Officer of SCOR US and SCOR Canada |
| Uwe Eymer | Chief Executive Officer of SCOR Global Life |
| Michael Kastenholz | Chief Financial Officer of SCOR Global Life, Group Deputy Chief Financial Officer |
| Gilles Meyer | Managing Director of SCOR Global Life's Business Unit 1 |

### 10. Auditors

French *sociétés anonymes* publishing consolidated financial statements are required by French law to have two auditors, who perform their audit tasks jointly. SCOR's auditors are Mazars & Guérard, Paris, and Ernst & Young Audit, Paris.

### 11. Annual Reports

The annual report *(document de référence)* of SCOR for the business year 2006, the two previous financial years and further information on SCOR are available on SCOR's website (www.scor.com). The annual report 2006 may also be obtained free of charge from UBS Investment Bank, Prospectus Library, P.O. Box, CH-8098 Zurich (telephone: +41 (0)44 239 47 03, fax: +41 (0)44 239 21 11, e-mail: swiss-prospectus@ubs.com).

### 12. Significant Changes

Except as described herein, no material changes in SCOR's assets and liabilities, financial position, earnings and prospects taken as a whole have taken place in the period from January 1, 2007 until April 3, 2007.

On February 12, 2007, SCOR announced it had recorded an increase of around 10 % in worldwide premium income for Non-Life reinsurance renewed at January 1, 2007.

On April 4, 2007, SCOR announced its intention to delist its *American Depositary Shares* (see Section C.7) from the New York Stock Exchange and to have them deregistered with the United States Securities and Exchange Commission (**SEC**) in accordance with the rules facilitating the deregistration of shares of foreign issuers issued by the SEC once these rules enter into force. The delisting from the New York Stock Exchange and the deregistration with the SEC are expected to take place in June 2007.

### 13. Persons Acting in Concert

In respect to the acquisition of all Converium Shares by SCOR, SCOR and all companies directly or indirectly controlled by it, namely SCOR Global P&C S.A. and IRP Holdings Ltd., are acting in concert.

## D. Financing of Cash Portion | Issuance of New SCOR Shares

The cash portion of the Offer Price is paid from SCOR's own funds available. SCOR intends to re-finance all or part of the cash portion by means of a senior and/or subordinated debt.

All measures for the issuance of the New SCOR Shares necessary at this time have been taken by SCOR, whereas the issuance of the New SCOR Shares is still subject to the approval by SCOR's general shareholders' meeting. SCOR's shareholders' meeting has been convened for April 26, 2007 and the publication of the agenda in the *Bulletin des annonces légales obligatoires* of April 6, 2007 has been requested.

SCOR's Board of Directors will propose to SCOR's extraordinary shareholders' meeting to grant an authorization to the Board of Directors to issue up to 53,184,556 New SCOR Shares in the context of the Offer, so that for each tendered Converium Share, 0.5 New SCOR Shares will be issued.

## E. Information about the Target Company

### 1. Share capital

Pursuant to its articles of incorporation, Converium has a share capital of CHF 733'447'310 divided into 146'689'462 Converium Shares. In addition, its articles of incorporation include an authorized capital of CHF 20,000,000 for the issuance of up to 4,000,000 Converium Shares until April 11, 2008, and a conditional capital of CHF 20,000,000 for the issuance of conversion and option rights for up to 4,000,000 Converium Shares.

### 2. Intentions of SCOR regarding Converium

SCOR intends to combine the expertise of both Converium and SCOR. Therefore, SCOR intends to allocate a significant number of key positions in the new group to current Converium managers and underwriters, in line with the key principles already prevailing at SCOR, i.e. international management, equal opportunity, an approach based on merits and professional expertise.

SCOR expects to combine the European operations in three key locations in Zurich, Cologne and Paris which should facilitate the future group organisation. In particular, SCOR intends to maintain Converium's strong

presence in Zurich whereby the operating company would become a strategic pillar of the combined group with worldwide responsibilities.

SCOR intends to delist the Converium Shares from the SWX Swiss Exchange following completion of the Offer. If SCOR acquires more than 98 % of the Converium Shares, SCOR intends to request the cancellation of the remaining Converium Shares in accordance with art. 33 SESTA. Should SCOR acquire 98 % or less but 90 % or more of the voting rights of Converium, SCOR intends to merge Converium with a company controlled by SCOR whereby the remaining Converium minority shareholders would receive a compensation other than ownership interests in the surviving entity (presumably SCOR Shares and/or cash). The value of such compensation in case of a merger may not be equal to the Offer Price. Should SCOR acquire less than 90 % of the voting rights of Converium, it reserves the right to compensate the remaining minority shares by other means, e.g. by way of a private or public offer or cross-border statutory merger.

### 3. Shareholdings in Converium of SCOR and those Acting in Concert with SCOR

As at the date hereof, two wholly-owned subsidiaries of SCOR hold 12,200,000 Converium Shares, representing 8.32 % of Converium's share capital. Moreover, as of the date hereof, two purchase agreements have been concluded with respect to another 36,120,350 Converium Shares (see Section E.4).

### 4. Purchase and Sales in Converium Shares

During the 12 months prior to the publication of the pre-announcement of the Offer on February 26, 2007, SCOR Global P&C S.A. and IRP Holdings Ltd., both wholly-owned subsidiaries of SCOR, have purchased a total of 7,300,000 Converium Shares and options for 4,900,000 Converium Shares. All the options were exercised prior to the publication of the pre-announcement.

In addition, SCOR has concluded a share purchase agreement and a contribution agreement (*traité d'apport*) with Patinex on February 16, 2007 concerning the acquisition/exchange of another 29,020,350 Converium Shares. On February 17/18, 2007, SCOR has entered into a share purchase agreement and a contribution agreement (*traité d'apport*) with Alecta concerning the acquisition/exchange of 7,100,000 Converium Shares. In both cases the compensation agreed upon consists of 0.4938272 SCOR Shares plus a cash portion of CHF 4.20 per Converium Share. Based on the opening price of SCOR Shares on February 16, 2007, at that date, this compensation corresponded to CHF 20.93 per Converium Share (or CHF 21, respectively, if SCOR exercises its cash payment option or, failing approval or authorization for the issuance of SCOR Shares, is required to settle against cash). This constitutes the highest price that has been paid by SCOR during the last 12 months for Converium Shares.

The completion of both share purchase agreements is subject to the receipt of the relevant regulatory and antitrust approvals.

### 5. Agreements between SCOR and Converium, its Shareholders, Officers and Directors

As described in Section E.4, SCOR has entered into separate share purchase agreements with Patinex and Alecta. Moreover, on January 24, 2007 SCOR entered into a confidentiality agreement with Patinex for the purposes of contract negotiations.

Save as disclosed herein, there are currently no other agreements in place between SCOR and the persons acting in concert with SCOR, on the one hand, and Converium, its governing bodies and shareholders, on the other hand.

### 6. Confidential Information

SCOR confirms that it has not directly or indirectly received any confidential information about the Converium group from Converium or companies controlled by it, which could have a material effect on the decision of the shareholders of Converium whether to accept this Offer.

## F. Publication

This Offer Prospectus and other publications in connection with the Offer will be published in the "Neue Zürcher Zeitung" in German and in "Le Temps" in French. The Offer Prospectus will also be delivered for publication to one of the principal electronic media publishing financial market information.

## G. Report of the Review Body Regarding the Offer Prospectus pursuant to Article 25 SESTA

As an independent review body recognized by the supervisory authority to examine public tender offers in accordance with the Federal Act on Stock Exchanges and Securities Trading (hereinafter "SESTA") and the Ordinances promulgated thereunder (hereinafter "Ordinances"), we have examined the offer prospectus. Our examination did not extend to any exhibits to the offer prospectus.

The offer prospectus is the responsibility of the offeror. Our responsibility is to express an opinion on SCOR S.A.'s respective compliance based on our examination.

Our examination was conducted in accordance with the Swiss standards promulgated by the profession, which require that an examination be planned and performed to verify the formal completeness in conformity with the SESTA and the Ordinances and to obtain reasonable assurance about whether the offer prospectus is free from material misstatement. We have examined on a test basis evidence supporting whether the information in the offer prospectus complies with the relevant SESTA regulations. Furthermore, we have verified compliance with the SESTA and the Ordinances.

We believe that our examination provides a reasonable basis for our opinion.

In our opinion:

— the offer prospectus complies with the SESTA and the Ordinances;

— the offer prospectus is complete and accurate;

— the requirement for equal treatment of the recipients of the offer has been complied with;

— the conditions of the minimum price regulations have been respected;

— the financing of the offer is secured and the necessary funds will be available on the settlement date; in addition, the offeror has undertaken the necessary measures to ensure that the offered shares are available at the settlement date; and

— the conditions of the effects of the pre-announcement of the offer have been respected.

Zurich, April 4, 2007
Ernst & Young AG
Louis Siegrist          Stefan Seiler

## H. Consummation of the Offer

### 1. Information | Registration

Shareholders of Converium holding their Converium Shares in a deposit account with a bank in Switzerland will be informed about the Offer by their deposit bank, and are asked to proceed in accordance with the instructions of their deposit bank.

### 2. Tender Agent

UBS Investment Bank has been appointed by SCOR as acceptance, paying and exchange agent for this Offer.

### 3. Tendered Converium Shares

If Converium Shares are tendered, the depositary banks will assign to them a new security number (2 973 347). These securities will only exist in book-entry form; a physical delivery will not be possible. SCOR has applied for the opening of a second trading line for the tendered Converium Shares on SWX Swiss Exchange.

When trading tendered Converium Shares on the second line, the usual stock exchange fees and commissions will become due, which are to be borne by the selling, respectively, buying shareholders of Converium.

The trading on the second trading line will be discontinued after the expiration of the Additional Acceptance Period.

### 4. Exchange and Settlement

See Section B.8.

## 5. Costs and Taxes

The exchange of Converium Shares deposited with banks in Switzerland and tendered during the Offer Period or the Additional Acceptance Period is settled free of fees and charges to the shareholder. SCOR will bear the Swiss stamp duty and the stock exchange fees imposed on the sale if applicable.

No withholding tax will be levied on the exchange of Converium Shares pursuant to this offer.

*Shareholders who are tax resident in Switzerland*

In general, the following Swiss income, respectively, Swiss profit tax consequences will likely result for Converium shareholders who are taxpayers in Switzerland only:

(a) Converium shareholders holding their Converium Shares as private assets and who tender their Converium Shares to the Offer should achieve either a tax-free private capital gain or a non-tax-deductible capital loss, unless the shareholder qualifies as a securities trader. There is, however, a risk that capital gains may be re-qualified as taxable earnings if the Offer together with subsequent mergers, dividend payments or refinancing transactions should be deemed a full or partial liquidation of Converium under applicable tax laws and practices of the tax authorities. As significant parts of the respective tax laws have changed as per January 1, 2007, their future interpretation is not fully certain. The respective risks may be avoided by a sale of the Converium Shares in the market.

(b) For Converium shareholders holding their Converium Shares as business assets as well as shareholders qualifying as securities traders, who tender their Converium Shares to the Offer, receiving New SCOR Shares as part of the Offer Price should, pursuant to the general rules, qualify as a tax neutral share for share exchange, provided that the tendering shareholders will book the New SCOR Shares at the same book value as the tendered Converium Shares. Cash received as part of the Offer Price and the cash payment for fractional entitlements presumably qualify as taxable income, respectively, profit. A tax relief may be available if the requirements of the so-called participation reduction are satisfied.

*Shareholders who are not tax resident in Switzerland*

Shareholders who are not taxpayers in Switzerland for purposes of income taxes will not become subject to Swiss income taxes as a result of the Offer and payment of the Offer Price, provided, however, that the Converium Shares held by them cannot be attributed to a permanent establishment or business operation in Switzerland. Shareholders who are not tax resident in Switzerland may become subject to income and other taxes pursuant to the laws of other jurisdictions.

*Tax consequences for shareholders who do not tender their Converium Shares to the Offer*

If SCOR holds more than 98 % of the voting rights in Converium after settlement of this Offer, it intends to request the cancellation of the outstanding publicly held Converium shares in accordance with art. 33 SESTA (see Section E.2). In such case, the tax consequences for the shareholders of Converium Shares will be the same as if they had tendered their Converium Shares to the Offer (see above).

If SCOR holds between 90 % and 98 % of the voting rights in Converium after settlement of this Offer, it intends to merge Converium with a company controlled by SCOR whereby the remaining minority shareholders would receive a compensation other than ownership interests in the surviving entity (presumably SCOR Shares and/or cash, see Section E.2). If this compensation is paid by the merged entity, the following income and profit tax consequences will likely result for shareholders who are Swiss tax residents:

(a) Shareholders holding their Converium Shares as private assets realize a taxable income on the difference between the value of the compensation and the nominal value of the Converium Shares (unless the shareholder classifies as a professional securities trader).

(b) Shareholders holding their Converium Shares as business assets as well as shareholders qualifying as securities traders have the same tax consequences as if they tendered their Converium Shares to the Offer (see above).

Shareholders who are not tax resident in Switzerland are not subject to Swiss income or profit taxes, except if their Converium Shares are attributed to a permanent establishment or a business operation in Switzerland.

If the compensation is paid by the merged entity following a merger of Converium with a Swiss company controlled by SCOR, the Swiss withholding tax at a rate of currently 35 % will be payable on the difference between the value

16

of the compensation and the nominal value of the Converium Shares. The withholding tax is fully, partially or not refundable depending on the tax status and tax residency of the shareholder.

If the compensation is paid by the parent company rather than by the merged entity following a merger of Converium with a Swiss company controlled by SCOR, the income, profit and withholding tax consequences may, under certain circumstances, be the same as if the shareholders had tendered their Converium Shares to the Offer (see above).

*General remark*

All shareholders (and beneficial owners) of Converium Shares are advised to have the tax implications of this Offer assessed by their own tax advisor.

## 6. Dividend Rights

The right to dividends of the New SCOR Shares resulting from the Offer will arise as from the date of their issuance.

## 7. Cancellation and Delisting

As set out in Section E.2 of this Offer Prospectus, SCOR intends to delist the Converium Shares from the SWX Swiss Exchange and to cancel any Converium Shares not tendered or to squeeze-out, respectively, any remaining shareholders, to the extent possible under applicable laws.

## 8. Applicable Law and Place of Jurisdiction

The Offer, and all rights and obligations arising under or in connection with the Offer, shall be governed by Swiss law. **Exclusive place of jurisdiction for all disputes arising out of or in connection with the Offer is Zurich 1.**

# I. Indicative Timetable

| | |
|---|---|
| Start of the Offer Period: | April 23, 2007 |
| End of the Offer Period*: | May 22, 2007, 4:00 p.m. CET |
| Publication of the preliminary interim result*: | May 23, 2007 |
| Publication of the definitive interim result*: | May 29, 2007 |
| Start of the Additional Acceptance Period*: | May 29, 2007 |
| End of the Additional Acceptance Period*: | June 11, 2007, 4:00 p.m. CET |
| Publication of preliminary end result*: | June 12, 2007 |
| Publication of definitive end result*: | June 15, 2007 |
| Settlement Date*: | June 21, 2007 |

\* SCOR reserves the right to extend the Offer Period once or several times in accordance with Section B.6 in which case the subsequent dates will be postponed.

---

This Offer Prospectus in German or French may be obtained free of charge from:

UBS Investment Bank, Prospectus Library, P.O. Box, CH-8098 Zurich (telephone: +41 (0)44 239 47 03, fax: +41 (0)44 239 21 11, e-mail: swiss-prospectus@ubs.com); or on www.scor.com.

SCOR's share offering circular (*prospectus d'admission*) for the New SCOR Shares will be published on www.scor.com.